(No. 105795.—

STEVEN BLUM, Appellant, v. JUDY KOSTER, Appellee.

*Opinion filed October 8, 2009.*

Joel S. Ostrow, of Bannockburn, for appellant.

Marvin J. Leavitt, David C. Adams and John G. Radosevich, of Grund & Leavitt, P.C., of Chicago, for appellee.

JUSTICE KILBRIDE delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Freeman, Thomas, Garman, Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

In this appeal, we review whether (1) the trial court erred in modifying Judy Koster's periodic maintenance; (2) the trial court erred in providing that its maintenance award was nonmodifiable and nonreviewable; and (3) the trial court erred in dismissing, as untimely, Judy's petition for contribution of attorney fees. The trial court reduced Judy's periodic maintenance and limited maintenance to three years. The order entered by the trial court provided Judy's maintenance was "non-modifiable as to duration and amount and can not be changed if there is a change in circumstances nor is it subject to any review by this Court." The trial court also dismissed, as untimely, Judy's petition for contribution of attorney fees incurred in the postdecree proceedings.

The appellate court determined the trial court erred in reducing Judy's periodic maintenance. The appellate court further concluded that the time limitation period provided in section 503(j) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/503(j) (West 2004)) does not apply to postdecree petitions for contribution of attorney fees. Accordingly, the appellate court reversed the trial court's orders and remanded the cause for further proceedings. 377 Ill. App. 3d 509. We al-

lowed Steven Blum's petition for leave to appeal. 210 Ill. 2d R. 315. We now affirm in part and reverse in part the judgment of the appellate court and remand the cause to the trial court for further proceedings.

## I. BACKGROUND

Steven and Judy divorced after 17 years of marriage. Judy was awarded sole custody of the parties' minor children. The final judgment of dissolution of marriage incorporated the parties' marital settlement agreement. The marital settlement agreement provided that Steven would pay Judy unallocated maintenance and support, for her and the minor children, of $5,000 per month for 61 months. The agreement also stated that maintenance would be reviewable after April 30, 2005, and would not terminate without a court order. The marital settlement agreement further provided that the monthly payments and the percentage of Steven's bonus would continue for 61 months or until the first of several enumerated events, including "a showing of a substantial change in circumstances which shall not include the attainment of majority, or other emancipatory event of one or more of the minor children." Under a separate provision within the same section of the marital settlement agreement, Judy agreed to make "reasonable efforts to become economically self-sufficient."

Subsequent to the initial dissolution judgment, the trial court entered an agreed order that Steven would pay for the children's higher-education expenses and Judy would pay for the children's travel to and from college and certain other incidental expenses. The agreed May 2003 order also allocated Steven's previously undisclosed income and specified the "other income" did not modify the maintenance and support provisions of the marital settlement agreement, but supplemented the payments with new, "additional maintenance payments."

On January 3, 2005, Steven filed a petition requesting the trial court terminate Judy's maintenance after April 30, 2005. Steven argued that his obligation to pay maintenance to Judy should be terminated because the children had attained majority and he was paying their college expenses. Steven also alleged: (1) Judy's living expenses were lower because she had moved to a smaller home; (2) she was a licensed attorney who could support herself; and (3) she had an obligation of self-support under the marital settlement agreement. Judy argued the unallocated payments were not simply child support and the children's reaching majority was excluded as a ground to modify payments under the marital settlement agreement. Judy also denied she was able to support herself and asserted that Steven failed to show a substantial change in circumstances to justify modification or termination of maintenance.

A seven-day intermittent trial commenced on August 9, 2005. The evidence presented at trial established that Judy was born in 1949, and graduated from the University of Illinois with a bachelor's degree in French and English literature. In 1972, Judy obtained a master's degree in teaching. She never taught, except for student teaching, and then worked as an editor for approximately two years.

Judy then attended and graduated from law school, passing the Illinois bar exam in February 1978. She worked at a law firm for about one year. She then worked for a franchise company before opening her own law practice where she handled a variety of small cases for about a year and a half.

In September 1982, Judy and Steven married. Steven had just completed his residency in anesthesiology and was residing in California. Judy closed her law practice and joined Steven in California in October 1982. The parties' sons were born in 1984 and 1986, and Steven's

son from his first marriage lived with the parties for several years. Although Judy passed the California bar exam, she did not have an active legal career. Judy dedicated herself to her family, serving as the homemaker and raising the children.

Steven's career prospered and the family maintained a high standard of living. In 1993, the family relocated to Illinois. Judy continued to raise the children and manage the home and the family still enjoyed a high standard of living. In 1998, Steven filed for a dissolution of the marriage.

Following the dissolution, the parties' sons lived with Judy. Steven's visitation was structured around his work schedule. When the children began attending college, Judy continued to maintain the home and the boys continued to live with Judy approximately four and a half months per year.

After the dissolution, Judy sought to develop an immigration law practice. She joined professional associations of immigration lawyers, attended classes and seminars, and bought books and materials related to immigration law. From 2000 to 2005, Judy maintained an office and worked approximately two days a week around the children's schedules. Judy never earned a profit from her law practice.

In 2003, Judy was approached about some jewelry she had made and asked to participate in a show. She spent time and money making jewelry, hoping to supplement her income, but was unsuccessful.

After closing evidence on October 25, 2005, the trial court entered a written order on November 2, 2005, reducing Judy's monthly maintenance to $3,500 beginning May 1, 2005, and limiting maintenance to three years. The trial court's order further provided:

"This is in full and complete satisfaction of STEVEN BLUM's obligation to pay maintenance to JUDY KOSTER and other than the aforesaid payments, she shall be forever

barred from seeking maintenance from the Petitioner. This Order is non-modifiable as to duration and amount and can not be changed if there is a change in circumstances nor is it subject to any review by this Court."

On December 2, 2005, Judy filed a motion to reconsider and a petition for contribution of attorney fees. Steven answered Judy's motion to reconsider and moved to dismiss her contribution petition as untimely. The trial court denied Judy's motion to reconsider and granted Steven's motion to dismiss Judy's petition for contribution of attorney fees.

The appellate court found the trial court's reduction of Judy's maintenance was not supported by the evidence. The appellate court also determined that the trial court exceeded its statutory authority in making its award of maintenance nonmodifiable. Further, the appellate court determined that the time limitation in section 503(j) is inapplicable to postdecree proceedings. The appellate court therefore reversed the trial court's orders and remanded for further proceedings. 377 Ill. App. 3d 509.

## II. ANALYSIS

Steven contends that the appellate court erred in finding that the trial court abused its discretion in modifying Judy's periodic maintenance. Steven also argues that the appellate court erred in ruling that the trial court lacks authority to award maintenance as nonmodifiable and nonreviewable. Finally, Steven asserts the appellate court erred in holding that the time limitation for filing petitions for contribution of attorney fees under section 503(j) is not applicable to postdecree proceedings. We first review the trial court's postdecree modification of Judy's periodic maintenance.

### A. Modification of Periodic Maintenance

Steven argues that the trial court properly construed and applied the statutory provisions of the Act (750 ILCS 5/501 *et seq.* (West 2004)), and that the trial court did not

abuse its discretion in modifying Judy's periodic mainte-nance. We review *de novo* the construction and applica-tion of the Act. See *People v. Donoho*, 204 Ill. 2d 159, 172 (2003) (reviewing *de novo* the construction of a statute). In construing a statute, "[o]ur primary objective is to ascertain and give effect to legislative intent." *People v. Perry*, 224 Ill. 2d 312, 323 (2007). "[T]he surest and most reliable indicator of [legislative intent] is the statutory language itself, given its plain and ordinary meaning." *Perry*, 224 Ill. 2d at 323.

In determining the plain meaning of statutory terms, we consider the statute in its entirety, the subject it ad-dresses, and the apparent intent of the legislature in enacting it. *People v. Davis*, 199 Ill. 2d 130, 135 (2002). When the statutory language is clear and unambiguous, we must apply it as written, without resort to extrinsic aids of statutory construction. *People v. Collins*, 214 Ill. 2d 206, 214 (2005).

If the statutory language is ambiguous, we construe the statute to avoid rendering any part meaningless or superfluous. *People v. Jones*, 214 Ill. 2d 187, 193 (2005). We do not depart from the plain language of the statute by reading into it exceptions, limitations, or conditions that conflict with the expressed intent. *People v. Mar-tinez*, 184 Ill. 2d 547, 550 (1998).

In general, modification and termination of mainte-nance and support obligations are governed by sections 502, 504(a), and 510(a—5) (750 ILCS 5/502, 504(a), 510(a—5) (West 2004)). Section 502 of the Act states, in relevant part:

"(a) To promote amicable settlement of disputes between parties to a marriage attendant upon the dissolu-tion of their marriage, the parties may enter into a written or oral agreement containing provisions for *** mainte-nance ***.

(b) The terms of the agreement, except those providing for the support, custody and visitation of children, are bind-

ing upon the court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties, on their own motion or on request of the court, that the agreement is unconscionable.

\* \* \*

(f) Except for terms concerning the support, custody or visitation of children, the judgment may expressly preclude or limit modification of terms set forth in the judgment if the agreement so provides. Otherwise, terms of an agreement set forth in the judgment are automatically modified by modification of the judgment." 750 ILCS 5/502 (West 2004).

Accordingly, section 502 of the Act permits parties to enter into a marital settlement agreement awarding maintenance, and the terms of the parties' agreement for maintenance are binding on the court except when the court finds the agreement unconscionable.

Section 504(a) of the Act states that "the court may grant a temporary or permanent maintenance award for either spouse in amounts and for periods of time as the court deems just \*\*\*, in gross or for fixed or indefinite periods of time \*\*\*." 750 ILCS 5/504(a) (West 2004). Section 504(a) provides that in granting maintenance awards, the trial court must consider the following relevant factors:

"(1) the income and property of each party, including marital property apportioned and non-marital property assigned to the party seeking maintenance;

(2) the needs of each party;

(3) the present and future earning capacity of each party;

(4) any impairment of the present and future earning capacity of the party seeking maintenance due to that party devoting time to domestic duties or having forgone or delayed education, training, employment, or career opportunities due to the marriage;

(5) the time necessary to enable the party seeking maintenance to acquire appropriate education, training,

and employment, and whether that party is able to support himself or herself through appropriate employment or is the custodian of a child making it appropriate that the custodian not seek employment;

    (6) the standard of living established during the marriage;

    (7) the duration of the marriage;

    (8) the age and the physical and emotional condition of both parties;

    (9) the tax consequences of the property division upon the respective economic circumstances of the parties;

    (10) contributions and services by the party seeking maintenance to the education, training, career or career potential, or license of the other spouse;

    (11) any valid agreement of the parties; and

    (12) any other factor that the court expressly finds to be just and equitable." 750 ILCS 5/504(a) (West 2004).

Under sections 502 and 504(a), unless the parties have agreed to specific terms for modification or termination of maintenance in a written agreement pursuant to section 502, the court must consider the statutory factors set forth in subsections (1) through (12) of section 504(a) in postdecree modifications of maintenance.

In the absence of a written agreement to the contrary, section 510(a—5) provides additional factors for the trial court to consider in determining whether modification or termination of maintenance is warranted. Specifically, section 510(a—5) states:

"(a—5) An order for maintenance may be modified or terminated only upon a showing of a substantial change in circumstances. In all such proceedings, as well as in proceedings in which maintenance is being reviewed, the court shall consider the applicable factors set forth in subsection (a) of Section 504 and the following factors:

    (1) any change in the employment status of either party and whether the change has been made in good faith;

    (2) the efforts, if any, made by the party receiving maintenance to become self-supporting, and

the reasonableness of the efforts where they are appropriate;

(3) any impairment of the present and future earning capacity of either party;

(4) the tax consequences of the maintenance payments upon the respective economic circumstances of the parties;

(5) the duration of the maintenance payments previously paid (and remaining to be paid) relative to the length of the marriage;

(6) the property, including retirement benefits, awarded to each party under the judgment of dissolution of marriage, judgment of legal separation, or judgment of declaration of invalidity of marriage and the present status of the property;

(7) the increase or decrease in each party's income since the prior judgment or order from which a review, modification, or termination is being sought;

(8) the property acquired and currently owned by each party after the entry of the judgment of dissolution of marriage, judgment of legal separation, or judgment of declaration of invalidity of marriage; and

(9) any other factor that the court expressly finds to be just and equitable." 750 ILCS 5/510(a—5) (West 2004).

The factors set forth in section 510(a—5) are inapplicable when the parties have otherwise agreed on the terms of modification and termination of maintenance in a written marital settlement agreement approved by the court, pursuant to section 502. We now review the trial court's application of the Act to Judy's periodic maintenance.

The parties do not dispute that they agreed to maintenance in their marital settlement agreement. Therefore, the terms of the marital settlement agreement are binding on the parties and the court. 720 ILCS 5/502(b) (West 2004). Our analysis, thus, requires an examination of the maintenance provisions of the parties' marital settlement agreement.

A marital settlement agreement is construed in the manner of any other contract, and the court must ascertain the parties' intent from the language of the agreement. See *In re Marriage of Dundas*, 355 Ill. App. 3d 423, 425-26 (2005); *In re Marriage of Carrier*, 332 Ill. App. 3d 654, 658 (2002). The interpretation of a marital settlement agreement is reviewed *de novo* as a question of law. *Carrier*, 332 Ill. App. 3d at 658.

Steven argues that the marital settlement agreement does not permit Judy to seek perpetual extensions of maintenance. Judy submits that the agreement did not impose an automatic termination date. Rather, according to Judy, the agreement made her initial award reviewable after 61 months. Steven counters in his reply brief that the parties' bargain was that after 61 months he could petition for the court to review Judy's right to continuing maintenance under their marital settlement agreement.

In the marital settlement agreement, the parties agreed that Judy would receive unallocated maintenance and support as follows:

"Judy shall receive as the unallocated maintenance and support for her and the minor children, commencing April 1, 2000, the sum of Five Thousand Dollars ($5,000.00) per month for a total of sixty-one (61) consecutive months. Judy's right to receive maintenance and Steven's obligation to pay maintenance after April 30, 2005 is reviewable. Maintenance shall not terminate without a court order. This award is based on Steven's gross monthly income of Thirteen Thousand Three Hundred Thirty Three Dollars and thirty three cents ($13,333.33) and the fact that Judy is presently unemployed. In addition to the aforesaid, Judy shall also receive thirty eight and one-half percent (38$1/2$%) of the gross amount of any bonus received by Steven during this time frame. In addition, $3,600.00 per year shall be paid by Steven to Judy from these bonus checks for the first 24 months of said bonus payments at the rate of an additional $1,200.00 in addition to her percentage for each

bonus payment. Each payment shall be made at the time Steven receives his bonus check, but the total must be paid on or before December 31st of each year. The total amount of these additional payments is $7,200.00. Said monthly payments and percentage of Steven's bonus will continue until the first to occur of the following events:

A. The death of Judy Koster;

B. The remarriage of Judy Koster;

C. Judy Koster's cohabitation with an adult male on a resident continuing conjugal basis;

D. The death of Steven Blum;

E. The change of custody of one or more of the minor children upon a showing of substantial change in circumstances;

F. Upon a showing of a substantial change in circumstances which shall not include the attainment of majority or other emancipatory event of one or more of the minor children."

Under a separate provision within the same section of the marital settlement agreement, Judy agreed to make "reasonable efforts to become economically self-sufficient."

Steven argues that maintenance should terminate because the children attained the age of majority and he is paying their college expenses. Steven also argues that Judy's living expenses are lower because she moved to a smaller home. Further, Steven argues that Judy is a licensed attorney, she is able to support herself and she is obligated under the marital settlement agreement to become self-sufficient. At the time of the hearing, Steven did not dispute Judy's inability to support herself.

Here, the parties' marital settlement agreement did not provide for consideration of any terms other than the statutory factors generally applicable to the trial court's review and modification of maintenance. We now examine whether the trial court erred in its review and modification of Judy's maintenance based on its consideration of those statutory factors.

As the appellate court in this case noted, the parties' marital settlement agreement is "not a model of unambiguous drafting." 377 Ill. App. 3d at 522-23.[1] Specifically, the agreement provides for "unallocated maintenance and support" for Judy and the children, with no separate provisions for child support. We are unable, therefore, to determine how much of Steven's obligation to pay unallocated maintenance and support was intended for Judy's maintenance needs and how much was intended in lieu of child support. Nor does the agreement state whether one party bears the burden of showing whether maintenance and support should continue, be modified, or be terminated after the initial 61-month period.

Nonetheless, the marital settlement agreement provisions, when viewed together, suggest that Judy's maintenance was intended to be rehabilitative, without calling it rehabilitative *per se*. First, the unallocated maintenance and support was to continue for 61 months. Significantly, both children would be emancipated at that time. Second, the agreement obligated Judy to make a reasonable effort to become self-supporting during the 61-month period. Third, the parties expressly agreed to review maintenance after 61 months. The parties further adopted factors for determining modification and termination of unallocated maintenance and support during the initial 61-month period.

The parties' marital settlement agreement here specifically provides for maintenance "reviewable" after the 61-month period. In viewing the agreement as a whole, we find that the parties agreed to a general review of maintenance. Thus, Steven did not have the burden of

---

[1]We intend no criticism of the attorneys and we acknowledge that written marital settlement agreements are often the product of intense negotiations that seldom offer the luxury of refined drafting.

proving a substantial change in circumstances. Rather, the trial court was required to consider the factors in sections 504(a) and 510(a—5) (750 ILCS 5/504(a), 510(a—5) (West 2004)) in determining whether to modify or terminate Judy's maintenance. Accordingly, the trial court had discretion to continue maintenance without modification, to modify or terminate maintenance, or to change the maintenance payment terms. See *In re Marriage of Golden*, 358 Ill. App. 3d 464, 471 (2005).

The appellate court agreed with Judy that the trial court abused its discretion in reducing her maintenance, based on the evidence adduced at trial. A trial court's decision to modify maintenance upon conducting a review of maintenance will not be disturbed absent a clear abuse of discretion. See *In re Marriage of Logston*, 103 Ill. 2d 266, 288 (1984); *In re Marriage of Bothe*, 309 Ill. App. 3d 352, 355 (1999) (trial court has discretion to modify or terminate maintenance). A clear abuse of discretion occurs when "the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." *People v. Hall*, 195 Ill. 2d 1, 20 (2000).

The appellate court stated in the background of its opinion that the trial court "conducted a redetermination of maintenance pursuant to section 510(a—5) of the Act, which requires the court to consider eight factors enumerated in that section in addition to the factors listed in section 504(a) of the Act." 377 Ill. App. 3d at 520. The appellate court also noted that "[t]he trial court specifically discussed and made factual findings regarding each of the eight factors under section 510(a—5)" and proceeded to summarize the trial court's findings as to each of the eight factors. 377 Ill. App. 3d at 520. As to the 12 factors listed in section 504(a), the appellate court noted that the trial court also recited that it "took into account all of the factors enumerated in section 504(a)." 377 Ill. App. 3d at 520.

Later in its opinion, the appellate court stated that "a trial court is to consider the 12 factors set forth in section 504(a) of the Act as well as the 8 factors set forth in section 510(a—5) of the Act." 377 Ill. App. 3d at 523. The appellate court determined, however, that the trial court's findings did not reflect it considered the statutory factors in reaching its decision because its reduction of Judy's maintenance was contrary to the evidence adduced at trial. 377 Ill. App. 3d at 524. Specifically, the appellate court noted "it is clear that the trial court focused primarily on Judy's efforts to become economically self sufficient" and the trial court's "comments show that it viewed Judy's efforts negatively, describing Judy's 25- to 30-hour-per-week schedule as 'less than part-time' and her efforts overall as 'minimal at best.' " 377 Ill. App. 3d at 523. Based on the evidence adduced at trial, the appellate court noted that it was "unclear on what evidence the trial court based these descriptions" and concluded "[i]n light of this testimony, we are hard-pressed to find a basis for the trial court's conclusion that '[t]he only impairment of Judy's earning capacity is *** self-imposed.' " 377 Ill. App. 3d at 523, 524. The appellate court therefore held that "the trial court abused its discretion in reducing Judy's maintenance from a total of approximately $8,600 per month to $3,500 per month." 377 Ill. App. 3d at 524.

We note that appellate court decisions have previously held that a trial court is not required to make explicit findings as to the factors it considered when entering a ruling under the Act. See *In re Marriage of Connors*, 303 Ill. App. 3d 219 (1999); *In re Marriage of Coram*, 86 Ill. App. 3d 845 (1980); *In re Marriage of Reyna*, 78 Ill. App. 3d 1010 (1979). In *In re Marriage of Connors*, the appellate court stated:

"Although a trial court should make specific findings or otherwise make clear from the record the relevant factors it considered in rendering a decision under the Marriage

Act, such findings are not mandatory. [Citation.] Reviewing courts have consistently held that, where the record is adequate to provide a basis upon which to review the propriety of the decision and the decision is supported by the evidence, the reviewing court will not reverse solely because specific findings are lacking." *In re Marriage of Connors*, 303 Ill. App. 3d at 230.

We agree with the principle adopted by our appellate court, that when the basis for an award of maintenance is established in the record, it is not mandatory that the trial court make explicit findings for each of the statutory factors. Here, although the appellate court acknowledged that the record indicates the trial court considered the statutory factors, the appellate court disagreed with the trial court's decision to reduce Judy's maintenance because the trial court's "findings do not reflect any consideration of these factors." 377 Ill. App. 3d at 524.

We conclude that the trial court considered the enumerated statutory factors and that the record supports its decision to continue Judy's award of maintenance at a reduced amount. Before deciding to modify Judy's maintenance award, the trial court heard evidence on seven days between August and October 2005. The evidence established that Steven and Judy enjoyed a high standard of living during their 17-year marriage. They maintained two residences, possessed two cars, and their monthly living expenses prior to the dissolution were estimated to be about $18,000. Upon dissolution of the marriage, the marital property was divided, with each party receiving one of the residences and one of the cars. In addition, the parties' individual retirement accounts were equalized, and each party received an IRA valued at over $1 million.

Judy was awarded custody of the parties' two children, who were 14 and 16 at that time. The estimated monthly living expenses for Judy and the boys was just over $14,000, and unallocated maintenance and support

was provided to meet the needs of both Judy and the boys.[2] In addition, Judy was required by the marital settlement agreement to make reasonable efforts to become economically self-sufficient and to contribute to the boys' support.

Other evidence established that Judy's needs changed in the 61 months after entry of the dissolution order. First, both boys reached the age of the majority and were no longer living at home full-time. The boys attended college, and Steven paid nearly all of their college expenses, totaling more than $62,000 in 2004, with that amount expected to increase in 2005. Also, Judy sold her residence in 2004 for an amount $130,000 greater than its estimated value at the time of the parties' dissolution. Thus, at the time of the hearing on Steven's motion to terminate maintenance, Judy's estimated monthly living expenses had decreased to just under $8,000.

Because the marital settlement agreement obligated Judy to make a reasonable attempt to become self-sufficient, the bulk of the evidence centered on Judy's present and future earning capacity and her efforts toward self-sufficiency. The evidence established that when Judy and Steven married in 1982, Judy had completed her undergraduate degree and obtained a master's degree in teaching; she had completed law school and passed the Illinois bar in 1978; and, she had been working in her own law practice in Chicago. After marrying, Judy put her career on hold while she raised the parties' two children. However, Judy made attempts

---

[2]Although the marital settlement agreement did not specifically designate separate amounts for maintenance and support, it is clear that the agreement contemplated the unallocated maintenance and support award would be used to meet the needs of both Judy and the children since the agreement provided that, if the unallocated maintenance and support award was terminated for some reason, a separate award for child support would be agreed upon by the parties or determined by the court.

to reestablish her own law practice when the marriage was dissolved.

The initial award of maintenance and support provided Judy five years to work toward self-sufficiency. In 2000, when the dissolution order was entered, Judy was working two to three days a week in her own law office in downtown Chicago. Her gross annual income from her practice of law was $6,541 in 2000, $20,309 in 2001, and $15,470 in 2002. But in 2003 and 2004, Judy's total income from the practice of law was less than $5,000, due to her attempts to start a jewelry-making business.

Although Judy's personal income was low during the 61-month period following the dissolution, the trial court also heard evidence indicating that her future earnings would likely increase. Judy testified that she had begun taking significant steps toward developing a practice in immigration law in 2005. To that end, she closed her downtown law office and began sharing space with an established immigration lawyer, Renee Bass, in a small office in Northbrook. Another immigration lawyer, Sharon Greenspan, testified that she had more clients than she could handle and that she had begun referring some of her clients to Bass and Judy. Judy testified that she was working in her new, shared, law office an average of 30 to 35 hours per week in 2005.

The trial court decided to extend Steven's obligation to pay Judy maintenance for an additional three years but lowered the monthly maintenance amount to $3,500, with one year of additional bonus payments. Based on the evidence presented, the trial court's determination was warranted.

It is clear from the marital settlement agreement that maintenance was intended to be temporary and rehabilitative. See *In re Marriage of Carpel*, 232 Ill. App. 3d 806, 828 (1992) (rehabilitative maintenance, as opposed to permanent maintenance, is intended to provide

the spouse with an opportunity to adjust to nonmarital life and provide herself with independent means of support). Further, the initial award was for both maintenance and support, although it did not allocate specific amounts for each. When the trial court reduced the maintenance award, it expressly considered the emancipation of the parties' children, the smaller size of Judy's home, and the substantial reduction in Judy's living expenses. Moreover, although the trial court found that Judy's steps toward financial independence were "minimal," apparently referring to her decision to forgo the practice of law in 2003 and 2004 in favor of jewelry-making, the court recognized the continuing disparity in the parties' income. For that reason, the trial court extended Steven's obligation to pay Judy maintenance for an additional three years. At the same time, however, Judy had returned to the practice of law and her future earning capacity appeared to have improved by 2005, thus warranting a reduction in the amount of maintenance.

When deciding whether to reduce or terminate an award of unallocated maintenance, a court must consider all of the factors set forth in sections 504(a) and 510(a—5) (750 ILCS 5/504(a), 510(a—5) (West 2004)). Here, the trial court considered those factors. In light of the evidence before the trial court, it cannot be said that the decision to reduce Judy's maintenance was arbitrary or fanciful or that no reasonable person would adopt the view that the award should be reduced. For this reason, we reverse that part of the appellate court judgment holding that the trial court erred in reducing Judy's maintenance award.

### B. Trial Court's Order for Nonmodifiable and Nonreviewable Maintenance

Steven next contends the Act gives trial courts discretion to make maintenance awards nonreviewable and

nonmodifiable. The appellate court found that the trial court exceeded its authority under section 510 of the Act (750 ILCS 5/510 (West 2004)) in making Judy's maintenance award nonmodifiable and nonreviewable.

Section 502(f) (750 ILCS 5/502(f) (West 2004)) states that the parties to a marital settlement agreement may agree to make maintenance nonmodifiable and nonreviewable. See *In re Marriage of Kozloff*, 101 Ill. 2d 526, 533-34 (1984) (holding that denial of petition for modification of maintenance was proper when the parties' agreement prohibited modification of maintenance). We agree with the appellate court that, absent the parties' express agreement, the Act does not permit a court to make a maintenance award nonmodifiable and nonreviewable. By stating that "[a]n order for maintenance may be modified or terminated only upon a showing of a substantial change in circumstances," section 510(a—5) of the Act (750 ILCS 5/510(a—5) (West 2004)) sets forth the conditions for modification or termination of maintenance and, thus, implicitly provides that all awards of maintenance are modifiable.

Steven argued in the appellate court that it should preserve the trial court's attempt to make the maintenance award nonmodifiable, by interpreting the court's order as establishing either maintenance in gross or "something in between" periodic maintenance and maintenance in gross. As noted by the appellate court, "[m]aintenance in gross is an exception to the rule that maintenance awards are modifiable unless the parties agree otherwise." 377 Ill. App. 3d at 525, citing *In re Marriage of Freeman*, 106 Ill. 2d 290, 295 (1985).

In *Freeman*, this court held that under section 510(b) of the Act, a trial court could award maintenance in gross payable periodically or in a lump sum. *Freeman*, 106 Ill. 2d at 298-300. We further held that the award was non-modifiable and did not terminate upon the occurrence of

events listed in section 510(b). *Freeman*, 106 Ill. 2d at 298-300. We reasoned that to hold otherwise "would destroy much of the flexibility which the Act was intended to foster." *Freeman*, 106 Ill. 2d at 300. In *Freeman*, this court was asked to examine whether a maintenance award was periodic maintenance or maintenance in gross and whether the award must terminate upon the spouse's remarriage. Steven argues that under *Freeman*, a maintenance order does not need to be modifiable and reviewable. *Freeman*, however, involved a maintenance in gross award and did not address the reviewability of fixed periodic maintenance. We therefore find *Freeman* inapplicable to this case.

From a practical view, the obvious need for modifiability is summed up in a phrase: "life changes."[3] The only certainty in life is the probability of life's ever-changing nature in the lives of divorced spouses. To conclude otherwise simply defies common sense and life experiences. For the preceding reasons, we affirm the appellate court's holding that the trial court erred in ordering Judy's maintenance award nonmodifiable and nonreviewable, absent express agreement by the parties.

### C. Contribution of Attorney Fees in Postdecree Proceedings

We next consider whether the trial court erred in dismissing Judy's petition for contribution of attorney fees as untimely. Steven contends the appellate court erroneously determined that the section 503(j) time for filing petitions for contribution of attorney fees is not enforceable in postdecree proceedings. Judy argues that the appellate court correctly held that section 503(j) is not applicable to postdecree petitions for contribution of attorney fees and that the appellate court's reconsidera-

---

[3]E. Mirabelli, Family Law Case Update, Law Update, ISBA Annual Meeting (June 27, 2008).

tion of *In re Marriage of Konchar*, 312 Ill. App. 3d 441 (2000), harmonized Illinois law on this point.

We reiterate the standard of review for construction and application of a statute is *de novo*. See *Donoho*, 204 Ill. 2d at 172. "Our primary objective [in construing a statute] is to ascertain and give effect to legislative intent \*\*\*." *Perry*, 224 Ill. 2d at 323. "[T]he surest and most reliable indicator of [legislative intent] is the statutory language itself, given its plain and ordinary meaning." *Perry*, 224 Ill. 2d at 323.

In determining the plain meaning of a statute, we consider the statute in its entirety, the subject it addresses, and the apparent intent of the legislature in enacting it. *Davis*, 199 Ill. 2d at 135. When the statutory language is clear and unambiguous, we must apply it as written, without resort to extrinsic aids of statutory construction. *Collins*, 214 Ill. 2d at 214.

If the statutory language is ambiguous, we construe the statute to avoid rendering any part meaningless or superfluous. *Jones*, 214 Ill. 2d at 193. We do not depart from the plain language of the statute by reading into it exceptions, limitations, or conditions that conflict with the expressed intent. *Martinez*, 184 Ill. 2d at 550.

Section 508 of the Act (750 ILCS 5/508 (West 2004)) governs attorney fees in postdecree dissolution proceedings. *Macaluso v. Macaluso*, 334 Ill. App. 3d 1043 (2002). Section 508(a) provides, in relevant part:

> "The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order any party to pay a reasonable amount for his own or the other party's costs and attorney's fees. Interim attorney's fees and costs may be awarded from the opposing party, in accordance with subsection (c—1) of Section 501. At the conclusion of the case, contribution to attorney's fees and costs may be awarded from the opposing party in accordance with subsection (j) of Section 503." 750 ILCS 5/508(a) (West 2004).

Section 508 specifically references section 503(j). Section 503(j) states, in relevant part:

"After proofs have closed in the final hearing on all other issues between the parties (or in conjunction with the final hearing, if all parties so stipulate) and before judgment is entered, a party's petition for contribution to fees and costs incurred in the proceeding shall be heard and decided, in accordance with the following provisions:

(1) A petition for contribution, if not filed before the final hearing on other issues between the parties, shall be filed no later than 30 days after the closing of proofs in the final hearing or within such other period as the court orders.

(2) Any award of contribution to one party from the other party shall be based on the criteria for division of marital property under this Section 503 and, if maintenance has been awarded, on the criteria for an award of maintenance under Section 504." 750 ILCS 5/503(j) (West 2004).

Section 508 of the Act (750 ILCS 5/508 (West 2004)) governs attorney fees in postdecree dissolution proceedings. *Macaluso v. Macaluso*, 334 Ill. App. 3d 1043 (2002). Prior to 1997, section 508 contained the attorney fee provisions of the Act. In 1997, the legislature amended sections 501, 503, and 508.

We begin our analysis with a brief survey of the appellate court's interpretation of section 503(j). In *Konchar*, 312 Ill. App. 3d 441, the Second District interpreted section 508(a) to mean that section 503(j) applies to both predecree and postdecree petitions for contribution of attorney fees. In *Macaluso*, 334 Ill. App. 3d at 1046, the Third District expressly rejected *Konchar's* interpretation and held that section 503(j) does not require postdecree petitions for contribution to be filed before final hearings on the other issues between the parties. The First District also rejected *Konchar's* interpretation in *In re Marriage of Carr*, 323 Ill. App. 3d 481, 485 (2001), in

*dicta*. In this case, the Second District revisited and disagreed with the prior decision in *Konchar* by a different panel, and held that section 503(j) is inapplicable to postdecree petitions for contribution of attorney fees.

In reviewing the contested statutory sections, section 508(a) provides that "[a]t the conclusion of the case," the court may award contribution of attorney fees and costs "in accordance with subsection (j) of Section 503." 750 ILCS 5/508(a) (West 2004). Section 503, in turn, is captioned "Disposition of property" and generally addresses distribution of property in the original judgment for dissolution of marriage. Subsection (j) of section 503 addresses contribution toward fees and costs incurred in the proceeding before the final dissolution of marriage judgment. Section 503(j) specifically references "the final hearing *on all other issues* between the parties." (Emphasis added.) 750 ILCS 5/503(j) (West 2004).

In *Macaluso*, a petition for contribution of attorney fees was filed after the trial court issued a ruling in postdecree proceedings. The trial court dismissed the petition as untimely under *Konchar*. The appellate court reversed, holding that the language "final hearing on all other issues between the parties" in section 503(j) referred to predecree bifurcated hearings and that the timing requirement of section 503(j) was, therefore, limited to predecree proceedings. *Macaluso*, 334 Ill. App. 3d at 1047. Contrary to *Konchar*, the appellate court in *Macaluso* concluded that section 503(j) did not apply to postdecree petitions for contribution of attorney fees. *Macaluso*, 334 Ill. App. 3d at 1047.

We agree with the analysis of the court in *Macaluso* and the appellate court in this case. Section 508 governs attorney fees generally, including petitions for contribution of attorney fees and costs incurred in postdecree proceedings and initial dissolution proceedings. We also

agree with *Macaluso*'s conclusion that section 503(j) governs the procedural requirements applicable to petitions for contribution of attorney fees and costs incurred prior to the entry of final orders for dissolution of marriage. The phrase "all other issues," in section 503(j) refers to bifurcated contested trials, when the grounds are tried first and "other remaining issues" are either settled or tried separately. See 750 ILCS 5/403(e) (West 2004) (providing for bifurcated contested trials on issues of grounds and "other remaining issues"). Further, in the section 503 context, attorney fees are awarded in view of the total disposition of property and assets, thus justifying the 30-day requirement for filing a petition for contribution of attorney fees. Practically, a judge rarely decides "other remaining issues" immediately after a contested trial on the remaining issues. The petition for fees must, however, be presented to the judge after close of the evidence, and then attorney fees are decided as part of the overall property and asset distribution.

Accordingly, we hold that the trial court erroneously dismissed Judy's petition for contribution of attorney fees as untimely. We affirm the appellate court's judgment reversing the trial court's order dismissing Judy's petition for contribution of attorney fees as untimely.

## III. CONCLUSION

We hold that the appellate court erred in finding that the trial court abused its discretion in reducing Judy's periodic maintenance award. We further hold that the appellate court properly found that the trial court erred in making Judy's periodic maintenance award nonmodifiable and nonreviewable. Finally, we hold that section 503(j) does not apply to postdecree petitions for contribution of attorney fees and the trial court therefore erroneously dismissed Judy's petition for contribution of attorney fees as untimely. We therefore affirm in part and reverse in part the judgment of the appellate court

48

reversing the orders of the trial court and remand the cause to the trial court for further proceedings.

*Affirmed in part and reversed in part;*
*cause remanded.*