# Illinois Official Reports

## Appellate Court

---

*International Ass'n of Firefighters Local 49 v. City of Bloomington*,
**2016 IL App (4th) 150573**

---

| | |
|---|---|
| Appellate Court Caption | INTERNATIONAL ASSOCIATION OF FIREFIGHTERS LOCAL 49, Plaintiff-Appellant, v. THE CITY OF BLOOMINGTON, Defendant-Appellee. |
| District & No. | Fourth District<br>Docket No. 4-15-0573 |
| Rule 23 order filed<br>Rule 23 order withdrawn<br>Opinion filed | April 27, 2016<br><br>July 1, 2016<br>July 1, 2016 |
| Decision Under Review | Appeal from the Circuit Court of McLean County, No. 14-MR-111; the Hon. Paul G. Lawrence, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Shane M. Voyles (argued), of Springfield, for appellant.<br><br>James J. Powers (argued), of Clark Baird Smith LLP, of Rosemont, for appellee. |

Panel                 JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Presiding Justice Knecht and Justice Holder White concurred in the judgment and opinion.

## OPINION

¶ 1        In 2012, plaintiff, International Association of Firefighters Local 49 (Union), and defendant, the City of Bloomington (City), began renegotiating their collective bargaining agreement. During negotiations, the parties were unable to agree on the extent to which the City would continue to pay retiring Union members for their unused sick leave. Unable to resolve that dispute, the parties referred the issue to mandatory arbitration. In November 2013, the arbitrator entered a written order adopting the City's final proposal. The Union petitioned for review of the arbitrator's decision in the circuit court. Both parties filed motions for summary judgment.

¶ 2        In June 2015, the circuit court entered a written order granting the City's motion for summary judgment and denying the Union's. In addition, the court denied the Union's motion for an award of statutory interest.

¶ 3        This appeal by the Union followed. We affirm.

¶ 4                       I. BACKGROUND

¶ 5            A. The Parties' Prior Collective Bargaining Agreements
and the "Buyback" Provision

¶ 6        The Union represents the approximately 103 members of the City's fire department. In 2012, the parties began renegotiating their collective bargaining agreement, which was set to expire on April 30, 2012. While negotiating a new collective bargaining agreement, the parties agreed on all issues except for the extent to which the City would continue to compensate retiring Union members for their unused sick leave.

¶ 7        Since 1992, the parties' various collective bargaining agreements included a sick leave "buyback" provision, pursuant to which the City would compensate retiring firefighters for unused sick leave time. That is, the City would pay each retiring Union member an applicable hourly rate for any unused sick leave that the Union member had accumulated while working as a City firefighter. The bargaining agreement applicable from 2009 to 2012 allowed Union members to receive payment from the City for 100% of their unused sick leave, up to a maximum of 1,800 hours. That payment would be placed into a retirement health savings account to pay the firefighter's health insurance costs during retirement.

¶ 8        During the 2012 collective bargaining, the City proposed reducing the breadth of the buyback provision. The City's final offer concerning sick leave buyback was as follows. The buyback program would not change for firefighters hired prior to June 17, 2013. However, for firefighters hired after June 17, 2013, the proposed provision would allow them to be paid for up to 50% of their unused sick leave upon retirement. In addition, the City would make a onetime $1000 payment to all firefighters employed in a bargaining unit position as of June

17, 2013. In response, the Union's final offer was to maintain the *status quo* as to the buyback provision.

¶ 9    Because the parties could not agree on the buyback provision, they referred the issue to arbitration. The parties waived their rights to a tripartite arbitration panel under section 14(b) of the Illinois Public Relations Act (Act) (5 ILCS 315/14(b) (West 2012)) and instead agreed to submit the dispute to arbitrator Amedeo Greco for resolution.

¶ 10                              B. The Arbitration Award

¶ 11    In November 2013, the arbitrator entered a written arbitration award. The arbitrator found that the City had entered collective-bargaining agreements with nine other represented bargaining groups in addition to the Union. Of those nine groups, seven had agreed to reduced sick leave buyback plans and six had agreed to no longer provide buyback to new employees. The two other units were both units of police officers. The police officer units had not agreed to a two-tiered sick leave buyback system and instead operated under the buyback program proposed by the Union in this case.

¶ 12    The arbitrator addressed several of the factors listed under section 14(h) of the Act (5 ILCS 315/14(h) (West 2012)). After doing so, the arbitrator determined that "[t]his case *** mainly turns upon how much weight, if any, must be given to the City's projection that it faces a $37,600,000 shortfall in its firefighters' pension liabilities." The arbitrator concluded that he could consider the City's pension obligations and shortfall when deciding the buyback issue.

¶ 13    The arbitrator determined that the City could address its shortfall by either raising taxes or decreasing expenditures. The arbitrator explained that one method of decreasing expenditures was to modify the buyback provision. In addition, the arbitrator found that the pension shortfall constituted extraordinary circumstances, which prevented the Union from receiving a full *quid pro quo* for any reduction in the buyback program.

¶ 14    The arbitrator concluded that the City's proposal was more reasonable. As a result, the arbitrator ordered that the City's final offer be selected and incorporated into the parties' current collective bargaining agreement.

¶ 15                          C. Review of the Arbitrator's Decision

¶ 16    In February 2014, the Union petitioned for review pursuant to section 14(k) of the Act (5 ILCS 315/14(k) (West 2014)). The Union argued that the arbitrator exceeded his authority by considering the pension issue and that the arbitrator's decision was arbitrary and capricious. In February 2015, the parties filed cross-motions for summary judgment (735 ILCS 5/2-1005(a) (West 2014)).

¶ 17    In June 2015, the circuit court entered an order denying in full the Union's motion for summary judgment and granting in full the City's motion for summary judgment. In addition, the court denied the Union's motion for an award of statutory interest under section 14(k) of the Act (5 ILCS 315/14(k) (West 2014)).

¶ 18    This appeal followed.

## II. ANALYSIS

The Union argues that (1) we must reverse the arbitrator's decision to adopt the City's proposal because the arbitrator improperly considered the City's pension obligations in reaching its decision and (2) in the alternative, the circuit court erred by failing to award the Union statutory interest on the $1000 payout. We reject both arguments.

### A. The Arbitrator's Decision To Adopt the City's Proposal
#### 1. *Arbitration Under Section 14 of the Act*

When collective bargaining involving a firefighter unit fails to resolve a dispute between the parties, either party may request arbitration to resolve the dispute. 5 ILCS 315/14(a) (West 2014) (Although section 14 of the Act contemplates an "arbitration panel," we refer only to an "arbitrator" because the parties waived their rights to a panel and agreed, instead, to a single arbitrator.). After either party requests arbitration, the arbitrator first identifies the economic issues in dispute and then directs the parties to submit their last offers of settlement on each issue. 5 ILCS 315/14(g) (West 2014). After a hearing, the arbitrator adopts the offer of settlement that more nearly complies with the factors listed in section 14(h) of the Act. 5 ILCS 315/14(g), (h) (West 2014). The arbitrator then enters a written opinion of his or her decision, which must include findings of fact. 5 ILCS 315/14(g) (West 2014).

In the case of firefighters, an arbitrator may only decide issues of wages, hours, and conditions of employment. 5 ILCS 315/14(i) (West 2014). In reaching a decision, the arbitrator shall base his or her findings, opinions, and order on the following factors: (1) the lawful authority of the employer; (2) stipulations of the parties; (3) the interests and welfare of the public and the financial ability of the unit of government to meet those costs; (4) a comparison of the wages, hours, and conditions of employees involved in the arbitration with the wages, hours, and conditions of other employees; (5) the cost of living; (6) the employees' overall compensation; (7) changes in any of the foregoing circumstances while the arbitration proceedings are pending; and (8) such other factors that are traditionally taken into consideration when determining wages, hours, and conditions of employment through voluntary collective bargaining. 5 ILCS 315/14(h) (West 2014).

#### 2. *Standard of Review*

Section 14(k) of the Act provides that an arbitrator's order is reviewable by the local circuit court. 5 ILCS 315/14(k) (West 2014). On review, the arbitrator's order can be disturbed for only the following reasons: (1) the arbitrator was without authority or exceeded his or her authority; (2) the order is arbitrary or capricious; or (3) the order was procured by fraud, collusion, or other similar and unlawful means. 5 ILCS 315/14(k) (West 2014).

An arbitrator's action is arbitrary or capricious only if the arbitrator does one of the following: (1) relies on factors that the legislature did not intend for the arbitrator to consider, (2) entirely fails to consider an important aspect of the problem, or (3) offers an explanation for a decision that runs counter to the evidence or that is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. *Town of Cicero v. Illinois Ass'n of Firefighters, IAFF Local 717*, 338 Ill. App. 3d 364, 372, 788 N.E.2d 286, 292 (2003). "That this court or the circuit court might have decided the issue differently does not

make the Arbitrator's decision arbitrary or capricious." *Id.* at 376, 788 N.E.2d at 294-95.

¶ 28                                                    3. *This Case*

¶ 29        In this case, the Union argues that the arbitrator's award was arbitrary or capricious because the arbitrator improperly considered the City's pension obligations when reaching a decision. The Union argues that the arbitrator made pensions a mandatory issue of arbitration, despite a statutory prohibition against such consideration. The Union also argues that, even if the City was authorized to consider the pension issue, its decision was arbitrary and capricious because it did not immediately affect the City's pension funding. We disagree.

¶ 30        The arbitrator did not make pension funding an issue of arbitration. The Act limits an arbitrator to making decisions on only the following issues: wages, hours, and conditions of employment. 5 ILCS 315/14(i) (West 2014). The issue before the arbitrator was the sick leave buyback program, not the level of pension funding. In reaching a decision about the sick leave buyback program, the arbitrator considered the City's pension obligations and its financial ability to meet those obligations. Section 14(h)(3) of the Act requires an arbitrator to consider the interests and welfare of the public and the financial ability of the unit of government to meet those costs. 5 ILCS 315/14(h)(3) (West 2014). The arbitrator, by considering the City's pension obligation and its financial ability to meet those obligations, did exactly what was required of him under the Act. The arbitrator considered pension funding as merely one factor in reaching a decision about the issue at hand—the sick leave buyback provision.

¶ 31        The Union, however, argues that the arbitrator's consideration of the City's pension obligations went too far. This passage from the Union's brief encapsulates the Union's argument:

> "[N]o *** arbitrator can order a municipality to pay increased pension contributions from the general fund nor could the City be ordered to pay for any increased salaries from the pension fund. An arbitrator certainly cannot achieve this same result in back-door fashion by converting a traditional general fund expense, like employee sick leave, into an asset of the pension fund."

The Union argues that the arbitrator went beyond merely considering the pension deficit as part of the City's ability to meet its obligations. Instead, according to the Union, the arbitrator used the sick leave buyback negotiations as a method of backdoor funding the City's pensions.

¶ 32        We disagree with the Union's characterization of the arbitrator's decision. The arbitrator had a duty to consider the interests and welfare of the public and the financial ability of the City to meet those costs. Those costs include the City's pension obligations. Although pension negotiations are conducted pursuant to a distinct statutory scheme, section 14(h) of the Act required the arbitrator to consider the pension funding as part of the City's broader financial landscape. Under the Union's suggestion, the arbitrator should have completely ignored the City's pension obligations when making its decision. Such a position contradicts the clear requirement of the Act that the arbitrator consider the City's ability to meet its financial needs.

¶ 33                              B. Denial of Firefighters' Request for Interest

¶ 34       In the alternative, the Union argues that the circuit court erred by failing to award the Union statutory interest on the $1000 payout. We disagree.

¶ 35       The Union's argument presents an issue of statutory interpretation. When construing a statute, our primary objective is to ascertain and give effect to the legislative intent. *Blum v. Koster*, 235 Ill. 2d 21, 29, 919 N.E.2d 333, 338 (2009). The most reliable indicator of legislative intent is the statutory language, given its plain and ordinary meaning. *Id.* When the statutory language is clear and unambiguous, we must apply it as written, without resort to extrinsic aids of statutory construction. *Id.*

¶ 36       Section 14(k) of the Act—which describes the process for review of arbitration orders—provides, in pertinent part, the following about interest awards:

> "[P]etitions for review must be filed with the appropriate circuit court within 90 days following the issuance of the arbitration order. The pendency of such proceeding for review shall not automatically stay the order of the arbitration panel. The party against whom the final decision of any such court shall be adverse, if such court finds such appeal or petition to be frivolous, shall pay reasonable attorneys' fees and costs to the successful party as determined by said court in its discretion. *If said court's decision affirms the award of money, such award, if retroactive, shall bear interest at the rate of 12 percent per annum from the effective retroactive date.*" (Emphasis added.) 5 ILCS 315/14(k) (West 2014).

¶ 37       The last sentence of section 14(k) allows an award of interest if "said" court affirms an award of money. 5 ILCS 315/14(k) (West 2014). We agree with the City that "said" in this situation means "[a]foresaid" or "above-mentioned." Black's Law Dictionary 1337 (7th ed. 1999). In section 14(k), the penultimate sentence provides that a party shall pay attorney fees and costs if the court finds that the party's appeal was frivolous. Therefore, we conclude that the "said" court referenced in the last sentence of section 14(k) refers to a court that has found that a party's appeal was frivolous. After the court makes such a finding, said court may award the successful party 12% interest per annum on the monetary award.

¶ 38       The situation in this case did not comport with the factual circumstances described by the last two sentences of section 14(k). The circuit court did not find that the appeal was frivolous, thereby authorizing an award of interest to the other party. To the contrary, the *Union* was the party that brought the unsuccessful appeal. The Union now argues that section 14(k) authorized the court to award the Union interest after affirming the arbitrator's decision. The Union's argument is contrary to the plain language of section 14(k), which does not allow an award of interest to the losing party on appeal. As a result, we affirm the court's decision to deny the Union's request for interest.

¶ 39                                           III. CONCLUSION
¶ 40       For the foregoing reasons, we affirm the circuit court's judgment.

¶ 41       Affirmed.