**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 230049-U

Order filed November 1, 2023

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| MARY BETH PORTEGYS, | ) | Du Page County, Illinois, |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | Appeal No. 3-23-0049 |
| and | ) | Circuit No. 00-D-972 |
| | ) | |
| THOMAS E. PORTEGYS, | ) | Honorable |
| | ) | Kenton J. Skarin, |
| Respondent-Appellant. | ) | Judge, Presiding. |

JUSTICE ALBRECHT delivered the judgment of the court.
Presiding Justice Holdridge and Justice Peterson concurred in the judgment.

**ORDER**

¶ 1       *Held*:  The court did not abuse its discretion when it denied respondent's petition to terminate his maintenance obligation.

¶ 2       Respondent, Thomas E. Portegys, filed a petition to terminate his maintenance obligation to his former spouse, Mary Beth Portegys. Following a hearing, the Du Page County circuit court entered an order denying his petition. On appeal, he argues that the court misapplied the

appropriate statutory factors and impermissibly failed to appoint a "fact-finding agent" to investigate his former spouse's condition. We affirm.

¶ 3                                                   I. BACKGROUND

¶ 4        Mary Beth and Thomas were married on September 21, 1975. The marriage lasted twenty-four years before Mary Beth filed a petition for dissolution of marriage in 2000. On March 13, 2001, the circuit court entered a judgment for dissolution of marriage. The parties' marriage settlement agreement (MSA) was incorporated by reference and attached as an exhibit to the dissolution order.

¶ 5        At the time of dissolution, Thomas was employed at Lucent Technologies and made a gross annual income of $85,000. The parties acknowledged that Mary Beth suffered from various medical ailments preventing her from being employed and she received an annual $9600 from Social Security Disability benefits. The MSA conditioned the parties' dissolution on Thomas paying Mary Beth monthly maintenance payments in the sum of $2100 on a permanent basis, with payments to begin immediately following the parties' dissolution.

¶ 6        On May 15, 2018, Thomas filed a petition to terminate his maintenance obligation based on his retirement earlier that year. The parties entered an agreed order on December 19, 2018, which denied Thomas's petition to terminate maintenance but reduced his monthly obligation to $984.

¶ 7        Thomas, proceeding as a self-represented litigant, filed a second petition to terminate his maintenance obligation on June 25, 2022. Within the petition, he alleged that Mary Beth was residing at an assisted living facility and relinquished her assets to the facility. Further, he believed that Mary Beth was receiving Medicaid to fund her stay. Thomas argued if Mary Beth's living arrangement was indeed funded through Medicaid, Medicaid would be the direct

2

beneficiary of his continued maintenance payments—not Mary Beth. Such an arrangement, Thomas urged, is "tantamount to reimbursing Medicaid from his social security" and a fate he characterized as "cruel and unnecessary punishment." However, due to his conceded uncertainty of Mary Beth's Medicaid situation, Thomas requested "the court *** appoint a fact-finding agent to investigate" the assisted living facility to determine (1) Mary Beth's Medicaid status, and (2) the implications, if any, terminating maintenance would have on her living situation. In her response, Mary Beth disputed Thomas's assertion concerning her asset relinquishment. Rather, she maintained a continued dependence upon her monthly social security payment, small pension, and maintenance payment to cover her expenses.

¶ 8        On January 3, 2023, the court heard arguments on Thomas's petition. Thomas provided sworn testimony at the hearing where he reiterated that based upon his research, his maintenance payments reimbursed Mary Beth's Medicare. Thomas testified that since the December 19, 2018, order, he came out of retirement to teach one school year of computer science at a community college. At the time of the hearing, he was working part-time as a research associate for a university website, and according to his financial affidavit admitted into evidence via stipulation, was making a gross monthly income of $5860.50. During cross-examination, Thomas suggested his former wife's receipt of Medicare was a substantial change in circumstance and that he was informed by Mary Beth's friends that she was receiving $5000 a month to cover her living expenses. Consistent with the MSA, the parties agreed that Mary Beth's health remained an impediment to any future employment. Mary Beth's counsel argued that Thomas failed to show that the receipt of Medicare was a substantial change in circumstances and that Thomas's income had increased since the entry of the maintenance modification based on his return to employment.

¶ 9 Following arguments, the court went sequentially through each of the relevant factors listed in section 510, finding three factors weighed against Thomas's claim of a substantial change in circumstances: (1) Thomas returned to work after the entry of the December 19, 2018, order,[1] (2) Mary Beth's health condition continued to make her employment infeasible, and (3) Thomas increased his income by procuring work. 750 ILCS 5/510(a-5)(1), (2), (7) (West 2022). The court considered the remaining section 510 factors neutral, noting that for several factors, Thomas failed to present sufficient evidence for the court to draw any discernible conclusions therefrom. In considering the relevant statutory factors, the court found that the totality of circumstances weighed against a finding of a substantial change in circumstances to support Thomas's petition. 750 ILCS 5/504 (West 2022); 750 ILCS 5/510 (West 2022). It entered a written order denying Thomas's petition shortly after the hearing's conclusion.

¶ 10 Thomas timely appealed.

¶ 11 II. ANALYSIS

¶ 12 Thomas presents two issues on appeal. First, he asserts the court erred in its section 510 analysis by finding several of the factors were either neutral or weighed against his petition. Second, he suggests that the court's refusal to appoint a fact-finding agent to investigate Mary Beth's Medicaid situation as his petition requested, is reversible error. Thomas asks this court to remand the cause to the circuit court with instruction to order the determination of Mary Beth's Medicaid eligibility should his maintenance obligation be terminated. We affirm the denial of Thomas's petition.

---

[1]Indeed, the court made a finding that the first factor in its section 510 analysis—any change in the employment status of either party—"weigh[ed] significantly against finding a substantial change in circumstances in [Thomas's] favor." See 750 ILCS 5/510(a-5)(1) (West 2022).

¶ 13    The decision to terminate maintenance is within the sound discretion of the circuit court and will not be reversed absent an abuse of discretion. *In re Marriage of Bothe*, 309 Ill. App. 3d 352, 355 (1999). An abuse of discretion occurs when the court's ruling is "arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." (Internal quotation marks omitted.) *In re Marriage of Heroy*, 2017 IL 120205, ¶ 24 (citing *Blum v. Koster*, 235 Ill. 2d 21, 36 (2009)).

¶ 14    Subsection 510(a-5) of the Illinois Marriage and Dissolution of Marriage Act (Act) requires a "showing of a substantial change in circumstances" before an order of maintenance may be modified or terminated. 750 ILCS 5/510(a-5) (West 2022). The party seeking modification or termination "bears the burden of proving" a substantial change in circumstances has occurred. *In re Marriage of Logston*, 103 Ill. 2d 266, 287 (1984). Courts must consider applicable factors, as set forth in sections 504(a) and 510(a-5) of the Act, in reviewing the propriety of a maintenance order's modification. 750 ILCS 5/510(a-5) (West 2022).

¶ 15    There are nine factors listed in subsection 510(a-5) that a court should consider when weighing a petition to modify or terminate maintenance, which include: (1) any change in the employment status of either party and whether the change has been made in good faith; (2) the efforts, if any, made by the party receiving maintenance to become self-supporting, and the reasonableness of the efforts where they are appropriate; (3) any impairment of the present and future earning capacity of either party; (4) the tax consequences of the maintenance payments upon the respective economic circumstances of the parties; (5) the duration of the maintenance payments previously paid (and remaining to be paid) relative to the length of the marriage; (6) the property, including retirement benefits, awarded to each party under the judgment of dissolution of marriage, judgment of legal separation, or judgment of declaration of invalidity of

marriage and the present status of the property; (7) the increase or decrease in each party's income since the prior judgment or order from which a review, modification, or termination is being sought; (8) the property acquired and currently owned by each party after the entry of the judgment of dissolution of marriage, judgment of legal separation, or judgment of declaration of invalidity of marriage; and (9) any other factor that the court expressly finds to be just and equitable. *Id.* § 510(a-5)(1)-(9).

¶ 16    Here, following arguments, the court detailed its application of each factor listed in subsection 510(a-5), finding no substantial change in circumstances occurred. Specifically, the court found that Thomas's change in employment status, the increase in his income from this employment, and Mary Beth's continued inability to become self-supporting weighed against a finding of a substantial change in Thomas's favor. Thomas argues that the court did not give due consideration to the duration of his maintenance payments relative to the length of the parties' marriage. To the contrary, in weighing this factor, the court noted the parties' marriage was "very long" and it continued "as we sit here today, the length of the maintenance payments is still *** less than the length of the parties'[ ] marriage."

¶ 17    Thomas also suggests that the court erred by failing to consider Mary Beth's government subsidy, which he alternately referred to as Medicaid and Medicare. However, he failed to provide credible evidence that she was actually receiving government subsidies and in what form. Further, he failed to establish that any receipt of Medicaid qualified as an increase in her income.

¶ 18    We do not fault the court's ruling, especially when Thomas's increase in income eclipses any potential additional income attributable to Mary Beth and weighs in opposition to his request. Thomas testified that his gross monthly income, not including his additional retirement

6

distributions, is $5860.50. At the time of the December 19, 2018, order modifying his maintenance payments, neither party was employed. The only evidence properly admitted at the hearing was Thomas's change in income, which served to support an *increase*, not a decrease, in his monthly maintenance obligation. We find the court did not abuse its discretion and appropriately applied the parties' circumstances to the subsection 510(a-5) factors.

¶ 19        Next, Thomas argues the court committed reversible error by implicitly denying his request to have a court-appointed fact-finding agent investigate Mary Beth's Medicaid situation. In his own words, his appeal is "based on a lack of information that this ruling was based on." Yet Thomas misunderstands his burden by attempting to impute an investigative responsibility upon the court that was, in fact, his own. We reiterate that Thomas, as the movant seeking termination of his maintenance obligation, bore the burden of establishing a substantial change in circumstances. *Logston*, 103 Ill. 2d at 287; *In re Marriage of Folley*, 2021 IL App (3d) 180427, ¶ 35. With his burden, Thomas had the sole responsibility to discover facts to support his petition, to provide those facts to the court, and to persuade the court that a substantial change in circumstances occurred. See E. Cleary, McCormick On Evid. § 337 (8th ed.) ("In most cases, the party who has the burden of pleading a fact will have the burdens of producing evidence and of persuading the [finder of fact] of its existence as well."). Further, his request for the appointment of a "fact-finding agent" is tantamount to a request for counsel. As a civil litigant, however, "neither the United States Constitution nor the Illinois Constitution provide the respondent with a right to counsel[.]" *In re Marriage of Schmidt*, 241 Ill. App. 3d 47, 49 (1993). The attempt to offload the costs and responsibilities associated with discovering facts to the court is amiss, and the court was under no obligation to aid Thomas in carrying his burden.

¶ 20       In addition, we note that Thomas's burden was not difficult. He could have called Mary Beth as a witness. He could have sent a letter to her counsel demanding that she bring any documentation with regards to government housing subsidies and agreements to court with her. He could have asked for the documentation before trial. Furthermore, there is no indication in the record that even had Thomas conducted a thorough investigation of Mary Beth's circumstances and the law, his petition would have been successful.

¶ 21                                    III. CONCLUSION

¶ 22       The judgment of the circuit court of Du Page County is affirmed.

¶ 23       Affirmed.