# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Kalkman v. Nedved*, 2013 IL App (3d) 120800

---

| | |
|---|---|
| Appellate Court Caption | JASON KALKMAN and LUCIA KALKMAN, Plaintiffs-Appellees, v. GEORGE NEDVED and MAUREEN NEDVED, Defendants-Appellants. |
| District & No. | Third District<br>Docket No. 3-12-0800 |
| Filed | June 24, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | A judgment for plaintiffs in an action alleging that defendants failed to disclose defects in the windows and doors of the home they bought from defendants was reversed, since the disclosure statement defendants provided pursuant to the Residential Real Property Disclosure Act stating that they did not know of any material defects, including defects in the "walls," did not require the disclosure of material defects in windows and doors. |
| Decision Under Review | Appeal from the Circuit Court of Knox County, No. 10-LM-234; the Hon. Scott Shipplett, Judge, presiding. |
| Judgment | Reversed and remanded with directions. |

Counsel on Appeal      Jeffrey Alan Ryva (argued), of Husch Blackwell LLP, of Peoria, for appellants.

Mark C. Johnson (argued), of Rockford, for appellees.

Panel      JUSTICE McDADE delivered the judgment of the court, with opinion.
Presiding Justice Wright concurred in the judgment and opinion.
Justice Lytton specially concurred, with opinion.

## OPINION

¶ 1    Before selling their home to plaintiffs, defendants executed a disclosure report pursuant to section 35 of the Residential Real Property Disclosure Act (765 ILCS 77/35 (West 2010)). The disclosure stated that defendants were not aware of any material defects with the walls or floors of the home. After they purchased the home, plaintiffs discovered material defects with the windows, patio doors, and garage door on the home which caused serious flooding problems. We must determine whether, under the Act, the obligation to disclose material defects in the "walls" of the home also requires that a seller disclose material defects in the home's windows and doors. We hold it does not, and reverse and remand.

¶ 2                        FACTS

¶ 3    Defendants George and Maureen Nedved owned a lakefront home in the rural Knox County subdivision of Oak Run, which they placed on the market in 2009. In 2010, plaintiffs Jason and Lucia Kalkman were interested in a lakefront home and found the Nedveds' property listed online. After what the trial court deemed "a shockingly slight inquiry into the condition of the home," the Kalkmans made the Nedveds an offer to purchase the home.

¶ 4    Prior to the sale, the Nedveds read and prepared a mandatory disclosure report, the form for which is prescribed by section 35 of the Residential Real Property Disclosure Act (Act) (765 ILCS 77/35 (West 2010)). That disclosure report contains 23 listed items which call for the sellers of residential real property to disclose whether they know of a specified material defect or other condition in the home. In their disclosure report, the Nedveds claimed not to know of any material defects or conditions in the home, answering in the negative for all 23 items.

¶ 5    The parties executed a contract for the purchase of the home, under which the Kalkmans would purchase the home subject to certain inspections. The Kalkmans were also allowed to spend a night in the home and examine it. While the Kalkmans did in fact spend a weekend at the property, they spent little or no time examining it, and instead visited with

friends and spent time boating on the lake. A routine mold inspection found some mold, and the parties agreed to an offset in the price for mold remediation. A formal home inspection did not discover significant problems, although it did note a potential issue with the windows.

¶ 6        After the sale was finalized the Kalkmans moved into the home, where they quickly discovered a variety of leaks in the windows and doors. When it rained, water entered the house through the patio door on the second floor of the home, saturating the carpet, floor, and the walls in the first floor below. The home's detached garage also experienced leaking through the door, resulting in standing water inside the garage. Finally, the Kalkmans discovered that many of the windows would not close normally because they had been improperly installed or had been warped by the elements.

¶ 7        The Kalkmans filed a complaint against the Nedveds in the circuit court of Knox County. The Kalkmans alleged that the Nedveds' failure to disclose the defects with the windows and doors constituted both a violation of the Act and common law fraud. The court granted partial summary judgment in favor of the Nedveds on several issues. The remaining issue before the court was whether the Nedveds were obligated to disclose the defects under item six of the disclosure report, which reads "I am aware of material defects in the walls or floors." The Nedveds had answered this question in the negative.

¶ 8        Following an evidentiary hearing and posttrial briefing, the trial court ruled in favor of the Kalkmans. The court found that the problems with the windows, patio door, and garage door were material defects, that they existed when the home was sold, and that the Nedveds were aware of those defects when they filed out the disclosure report. The court then addressed the issue of whether the Nedveds were required to disclose defects in the windows and doors under the Act. The court decided that to best give effect to the intent of the legislature in protecting buyers of residential property from hidden defects, the Act should be interpreted broadly. The court then determined that defects in windows and doors were required to be disclosed under the provision governing disclosure of defects in walls:

> "As to the patio doors, the Nedveds claim that the doors are not part of the walls, and neither are the windows and thus defects need not be disclosed. The Court is unaware of any controlling authority, but finds that doors and windows and walls all serve the same purpose, i.e. to protect the interior of the building from the elements. They may serve the additional function of allowing light to pass through, and may provide a means of ingress and egress from the building, but when they are closed their purpose is the same as a wall. They are not specifically excluded from the Disclosure Report and therefore defects to doors and windows must be reported."

¶ 9        Due to the Nedved's failure to disclose, the trial court awarded the Kalkmans actual damages for remediation of the defects totaling $25,478.21. In addition, the court awarded the Kalkmans attorney fees of $11,500. The Nedveds appealed, arguing that they are not required to disclose material defects in windows or doors under the Act.

¶ 10                                    ANALYSIS

¶ 11        For the purposes of this appeal, the Nedveds have conceded that there were material

-3-

defects in the home's windows and doors at the time it was sold; the only issue we must determine is whether sellers must disclose material defects with a home's windows and doors under the Act's obligation to disclose defects with a home's "walls." This is an issue of statutory construction, which is a question of law that is reviewed *de novo*. *Boaden v. Department of Law Enforcement*, 171 Ill. 2d 230, 237 (1996).

¶ 12       The fundamental rule of statutory interpretation is to ascertain and effectuate the legislature's intent. *Hamilton v. Industrial Comm'n*, 203 Ill. 2d 250, 255 (2003). The best indication of the legislature's intent is the plain language of the statute. *In re E.B.*, 231 Ill. 2d 459, 466 (2008). "[W]hen statutory language is plain and certain the court is not free to give it a different meaning." *In re Estate of Hoehn*, 234 Ill. App. 3d 627, 629 (1992). In addition, a court may not depart from the plain statutory language by reading into it exceptions, limitations, or conditions not expressed by the legislature. *In re Estate of Ellis*, 236 Ill. 2d 45, 51 (2009). However, if the statutory language is ambiguous, the court may consult other sources to ascertain the legislature's intent. *Krohe v. City of Bloomington*, 204 Ill. 2d 392, 395 (2003).

¶ 13       Some background on the Act will be helpful to understanding the issue at hand. The Act grants a buyer of residential real property certain remedies if a defect in the property is discovered, modifying the harsh common law doctrine of *caveat emptor*. *Penn v. Gerig*, 334 Ill. App. 3d 345, 350 (2002). Under the Act, a seller of residential real property must provide a prospective buyer with information about certain material defects to the property. 765 ILCS 77/35 (West 2010). The seller is required to disclose material defects of which he or she has actual knowledge, although the seller is not obligated to make any specific investigation or inquiry to complete the disclosure statement. 765 ILCS 77/25(b), (c) (West 2010). A seller who discloses information he or she knows to be false is liable to the buyer for actual damages and court costs. 765 ILCS 77/55 (West 2010). The court may also award reasonable attorney fees to the prevailing party. 765 ILCS 77/55 (West 2010).

¶ 14       To satisfy the requirements of the statute, the seller must complete the disclosure form prescribed by section 35 of the Act. 765 ILCS 77/20 (West 2010). Section 35 states that the disclosure report "is a disclosure of certain conditions of the residential real property" being sold. 765 ILCS 77/35 (West 2010). The report lists 23 specific conditions or material defects and asks sellers to certify whether they are aware of the presence of these defects or conditions in the home. 765 ILCS 77/35 (West 2010).

¶ 15       Relevant to the present dispute, on item six of the disclosure report, sellers must certify whether they are "aware of material defects in the walls or floors." 765 ILCS 77/35 (West 2010). None of the 23 items specifically address doors or windows. In addition, the statute has no "catch-all" item asking sellers to disclose defects not specifically listed. Despite this apparent gap in the statute, the trial court ruled that the Nedveds were required to disclose the defects in the doors and windows under the item requiring disclosure of defects in walls.

¶ 16       This case turns on how broadly we construe the term "wall," which the Act does not define. The Nedveds assert that the trial court erred by broadly construing the Act. They argue that the statute should be interpreted narrowly and that the plain meaning of wall excludes windows and doors. On the other hand, the Kalkmans note that purpose of the Act

-4-

is to provide potential buyers with information about known defects in the home. *Muir v. Merano*, 378 Ill. App. 3d 1103, 1103 (2008) (citing *Coughlin v. Gustafson*, 332 Ill. App. 3d 406, 413 (2002)). They argue that to best serve this purpose, windows and doors should be included within the statutory meaning of walls, because they are part of walls and serve the same purpose as walls–to divide and protect against the elements.

¶ 17      This is an issue of first impression in Illinois, although the parties cite a Pennsylvania Supreme Court case which addressed whether a window was "an inherent and integral part of the wall of the building." *Lopez v. Gukenback*, 137 A.2d 771, 775 (Pa. 1958). The Nedveds rely on the *Lopez* majority's reasoning that windows did not contribute to the structural support of the building, so windows were not included within the definition of walls; the court held that a window was "not part of, but simply an opening in, the wall." (Emphasis omitted.) *Lopez*, 137 A.2d at 776. In contrast, the Kalkmans cite the reasoning of the dissent, which believed the court should follow a previous Pennsylvania case holding that a skylight was part of a roof. *Lopez*, 137 A.2d at 778-79 (Musmanno, J., dissenting). The dissent reasoned that if a skylight was part of a roof, then a window was part of a wall, asking "[a]re they not both indispensable pieces of mosaic in their respective pictures?" *Lopez*, 137 A.2d at 779 (Musmanno, J., dissenting).

¶ 18      We find that neither the majority nor the dissent of *Lopez* is particularly persuasive here. The majority relies on an outdated notion that a wall must support a building's structure, which as will be seen below, many modern dictionaries do not include in their definitions. The thrust of the dissent is that the majority did not adequately distinguish a previous Pennsylvania case. Therefore, neither's rationale determines whether the Act's use of the term walls includes windows and doors within its definition.

¶ 19      Turning to the Illinois statute at issue, because "wall" is not defined by the Act, the court may look to a dictionary definition to determine the term's plain and ordinary meaning. *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1, 8 (2009) ("It is appropriate to employ a dictionary to ascertain the meaning of an otherwise undefined word or phrase."). The Nedveds cite a definition which defines wall as "any of various permanent upright constructions having a length much greater than the thickness and presenting a continuous surface except where pierced by doors, windows, etc." Random House Dictionary of English Language 2139 (2d ed. 1987). This definition implies that windows and doors are not included within the definition of wall, but instead are separate components which pierce a wall.

¶ 20      The Kalkmans have not cited any dictionary definition from which we could conclude that windows and doors are included within the definition of wall. Instead, they argue that the dictionary definition of wall does not adequately encompass the legislature's intent, which they assert is to ensure that defects are disclosed. But we do not agree that the dictionary definition of wall is not relevant here. When a term is not defined by statute, we assume the legislature intended the term to have its ordinary and popularly understood meaning. *People v. Sheehan*, 168 Ill. 2d 298, 306 (1995). From the definition above, as well as common usage, it seems reasonable to conclude that the ordinary meaning of wall excludes windows and doors.

¶ 21    Along with the term's plain and ordinary meaning, several maxims of statutory construction lead us to narrowly construe the statute and conclude that windows and doors are not included within the definition of a wall. First, the Act modifies the common law *caveat emptor* rule, and statutes in derogation of the common law must be strictly construed. *Williams v. Manchester*, 228 Ill. 2d 404, 419 (2008). "[A] statute in derogation of the common law cannot be construed as changing the common law beyond what the statutory language expresses or is necessarily implied from what is expressed." *Williams*, 228 Ill. 2d at 419. Given the dictionary definition above, it is not necessarily implied that windows and doors are included within the legislature's concept of walls.

¶ 22    Second, under the maxim *expressio unius est exclusio alterius*, meaning the "expression of one thing is the exclusion of another," we infer that when a statute lists the things to which it applies, the omissions should be understood as exclusions. (Internal quotation marks omitted.) *Metzger v. DaRosa*, 209 Ill. 2d 30, 44 (2004). See also *Martis v. Pekin Memorial Hospital, Inc.*, 395 Ill. App. 3d 943, 949-50 (2009) ("When certain things are enumerated in a statute, that enumeration implies the exclusion of all other things even if there are no negative words of prohibition."). Here, the legislature chose to enumerate 23 conditions or defects which a seller must disclose, but windows or doors are not specifically mentioned. This implies that the legislature did not intend for those features of a property to be covered by the disclosure report.

¶ 23    This conclusion is supported by the fact that the Act clearly is not intended to cover all potential material defects in a residential property. According to the statute, the "Report is a disclosure of *certain conditions*" of the seller's property. (Emphasis added.) 765 ILCS 77/35 (West 2010). The statutory disclosure report lists 23 items, each covering a specific condition or material defect. By the plain language of the Act, it only covers those conditions listed in the disclosure report, not all material defects. Other state disclosure statutes include an obligation to disclose all material defects to a property. See, *e.g.*, Md. Code Ann., Real Property § 10-702(e)(2)(viii) (West 2012) (including a catch-all provision requiring the seller disclose "[a]ny other material defects of which the vendor has actual knowledge"); Okla. Stat. Ann. tit. 60, § 833 (West 2012) (same). Had the Illinois legislature likewise wished to require the seller to disclose all material defects, it could have included a similar provision, but the legislature apparently did not intend for the disclosure requirement to be comprehensive.

¶ 24    We must narrowly construe the statutory language and therefore hold that a seller's obligation to disclose defects in the property's walls does not also include an obligation to disclose defects in the windows or doors.

¶ 25    We are not persuaded by the Kalkmans' argument that if the seller is not required to disclose defects in the windows or doors of the home, the purpose of the statute will be injured. The Kalkmans cite *Bauer v. Giannis* for the proposition that "[a]llowing a seller to ignore his or her obligation under the Act, avoid reporting a material defect, and thereby defeat a buyer's subsequent claim would only encourage the evils the legislature sought to remedy." *Bauer v. Giannis*, 359 Ill. App. 3d 897, 906 (2005). The reasoning of the *Bauer* court does not apply to this case, however. The *Bauer* court addressed a situation where the sellers did not disclose a flooding problem in the property's basement, which the Act

specifically called for them to disclose. See *Bauer*, 359 Ill. App. 3d at 899; 765 ILCS 77/35 (West 2010) ("2. I am aware of flooding or recurring leakage problems in the crawl space or basement."). *Bauer* does not address the situation at bar, which is whether a seller must disclose a defect not specifically mentioned in the disclosure report. While we agree that allowing sellers to avoid reporting what they are obligated to disclose would encourage the evils the legislature sought to remedy, here the Act creates no specific obligation to disclose defects in the windows or doors of a home.

¶ 26    Contrary to the arguments of the Kalkmans, our holding will not create a loophole in the statute; rather, it acknowledges that the Act only calls for disclosure of the defects specified by the legislature. This will not put buyers at an unfair disadvantage. Buyers are entitled to rely on the disclosures made by the seller, but the disclosure is not comprehensive, so prudent buyers may wish to obtain inspections and conduct due diligence before purchasing residential real property. The Act itself acknowledges that the disclosure is not a substitute for inspections or obtaining warranties from the seller. See 765 ILCS 77/35 (West 2010). Therefore, buyers can account for any gaps in the disclosure statute by bargaining for other protections during the purchase process.

¶ 27    Because we reverse the trial court's judgment in favor of the Kalkmans, we also reverse the court's award of attorney fees to them. On remand, the trial court should determine if the Nedveds are the prevailing party in the litigation, and if so, determine whether they are entitled to attorney fees as the prevailing party. See 765 ILCS 77/55 (West 2010). We express no opinion on whether the Nedveds should be compensated for their attorney fees if they are the prevailing party, as an award of fees is not mandatory and is within the trial court's discretion. *Miller v. Bizzell*, 311 Ill. App. 3d 971, 976 (2000).

¶ 28                                    CONCLUSION

¶ 29    For the foregoing reasons, the judgment of the circuit court is reversed, and the cause is remanded for further proceedings consistent with this opinion.

¶ 30    Reversed and remanded with directions.

¶ 31    JUSTICE LYTTON, specially concurring.

¶ 32    I agree with the majority's reading of the statute (765 ILCS 77/35 (West 2010)). I write separately to question whether the legislature intended to include windows and/or doors in the Act. Since the language of the Act is narrow, our narrow interpretation of the statute is the correct one. If, however, the intent was to avoid situations like the one in this case, where a seller is aware of material defects in the windows and doors and does not disclose them, the issue should be called to the attention of the legislature for its review. If the law is amended, I believe that the original intent of the Act will be more fully realized.