2020 IL App (1st) 192116

No. 1-19-2116

Fourth Division
December 3, 2020

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

|  |  |  |
|---|---|---|
| *In re* MARRIAGE OF | ) | |
| | ) | Appeal from the Circuit Court |
| BETSY DYNAKO, | ) | of Cook County. |
| | ) | |
| Petitioner-Appellee, | ) | No. 2015 D 002531 |
| | ) | |
| and | ) | The Honorable |
| | ) | David Haracz, |
| STEPHEN DYNAKO, | ) | Judge Presiding. |
| | ) | |
| Respondent-Appellant. | ) | |
| | ) | |

_____

PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.
Justices Hall and Lampkin concurred in the judgment and opinion.

**OPINION**

¶ 1    The instant appeal arises from respondent Stephen Dynako's motion to modify the maintenance he was ordered to pay to petitioner Betsy Dynako (now known as Betsy Zacate) in connection with the dissolution of their marriage. Since their marital settlement agreement contained a clause providing that maintenance was nonmodifiable, the trial court found that it lacked the authority to modify respondent's maintenance obligation and, accordingly, denied respondent's motion. Respondent appeals, claiming that the marital settlement agreement did not render his maintenance obligation nonmodifiable. For the reasons that follow, we affirm.

¶ 2                                                    BACKGROUND

¶ 3          On March 20, 2015, petitioner filed a petition for dissolution of marriage, alleging that the parties had been married in 2000 and had no children. Petitioner was 41 years old and a self-employed photographer, while respondent was 48 years old and was a vice president at a bank and was also a part-time psychotherapist.

¶ 4          On March 24, 2015, petitioner filed a motion for entry of an agreed order regarding various temporary matters, including temporary maintenance for petitioner.[1] Petitioner claimed that the parties agreed, *inter alia*, (1) that petitioner be granted exclusive possession of the marital residence, (2) that respondent pay petitioner $3741 per month in temporary maintenance, and (3) that respondent have access to borrow against his 401(k) and the ability to withdraw up to 50% of its current value of $170,000. On April 2, 2015, the trial court entered the agreed order.

¶ 5          On February 8, 2016, the trial court entered a judgment for dissolution of marriage, which incorporated a marital settlement agreement entered into by the parties.[2] The marital settlement agreement set forth provisions for maintenance, as follows:

          "2.1 [Respondent] agrees to pay [petitioner] for her maintenance the sum of $5,000.00 (Five Thousand Dollars) per month for FOUR YEARS (48 months). The first monthly payment of $5,000.00 shall be paid on the 25th day of the month immediately following the entry of this Judgment herein and a like monthly payment of $5,000.00 to be paid on the same day each succeeding month thereafter. [Respondent] shall continue to pay maintenance to [petitioner] for an additional FOUR

---

[1] The motion did not set forth the amount of either party's income at the time.
[2] Neither the marital settlement agreement nor the judgment for dissolution of marriage set forth any facts as to the amount of either party's income at the time.

YEARS (a total of 8 years of maintenance shall be paid-in-full) in decreasing amounts as follows:

a) Year 5: $50,000 annually ($4,166 per month);

b) Year 6: $40,000 annually ($3,333 per month);

c) Year 7: $30,000 annually ($2,500 per month);

d) Year 8: $20,000 annually ($1,666 per month).

Said maintenance payments shall be non-modifiable pursuant to Section 502(f) of the Illinois Marriage and Dissolution of Marriage Act. [Respondent] shall make said payments to [petitioner] by depositing monies into the jointly held Chase Bank account ***."

¶ 6 On November 7, 2017, petitioner filed a petition for rule to show cause, claiming that between May 2017 and October 2017, respondent had paid only $700 in maintenance payments, instead of the $30,000 he was required to pay. Petitioner further claimed that respondent had the ability to comply with the terms of the dissolution judgment but willfully chose not to do so. Respondent did not file a response to the petition for rule to show cause. On January 24, 2018, the trial court entered an order finding respondent to be in indirect civil contempt for failure to make $43,800 in maintenance payments as of the date of the order, plus statutory interest. As part of its findings, the court found that respondent "has not given any legally sufficient reasons for failure to comply with said order, even though [he] had, and still has, the means to comply with said order, and that [respondent's] failure to comply with said order is willful and contumacious." The court also ordered respondent committed to Cook County jail until he paid at least $10,000 to purge his contempt, with the mittimus stayed until the next court date.

¶ 7    At the next court date, on March 27, 2018, the trial court entered an order requiring respondent to complete a job diary, as well as to remain current on his maintenance payments. The court further stayed respondent's mittimus until the next court date in May. On May 29, 2018, the court found that, while respondent had been ordered to pay petitioner $10,000 by that date, he had paid only $5000. The court continued to require respondent to prepare a job diary, and also ordered respondent to prepare a financial affidavit. The court ordered respondent to pay $10,000 by the next court date, cautioning that "failure to make said payment may result in a body attachment."

¶ 8    On June 15, 2018, respondent filed a petition to modify the court's May 29, 2018, order, claiming that he did not have the financial resources to comply with the court's order because he was earning less than $3000 per month working as a "management consultant" and had withdrawn all funds from his 401(k) to make his maintenance payments. On July 6, 2018, the trial court entered an order ordering respondent to pay petitioner $1500 on the first of each month toward his maintenance obligation until further order of the court, and ordered respondent to "exercise his fullest efforts on obtaining employment sufficient to meet his [maintenance] obligation." The court also ordered respondent to tender his financial affidavit,[3] and allowed petitioner to conduct discovery as to respondent's financial condition. On September 13, 2018, respondent withdrew his petition to modify the court's May 29 order.

¶ 9    On October 18, 2018, the trial court entered an order on the previously-entered rule to show cause, finding that "[t]he previous finding of contempt against Respondent remains in full force and effect." The court further ordered that respondent was "under a continuing obligation to

_____

[3] While a notice of service provides that a financial affidavit and job search diary were subsequently sent to petitioner, neither of these documents are included in the record on appeal.

prepare job diaries and to pay Petitioner at least $1500.00 per month towards Respondent's obligation to pay maintenance to Petitioner. Respondent is also obligated to seek additional part-time employment."

¶ 10 On December 20, 2018, respondent filed a petition to modify the February 8, 2016, judgment for dissolution of marriage by terminating or modifying his maintenance obligation. While the marital settlement agreement provided that the maintenance payments were "non-modifiable pursuant to Section 502(f) of the Illinois Marriage and Dissolution of Marriage Act," respondent claimed that the maintenance obligation was not truly nonmodifiable because it did not specifically provide "that the non-modifiability applies to amount, duration, or both." Respondent claimed that a change in circumstances necessitated the modification of his maintenance obligation, as he had been without steady income for several years and his financial circumstances had "deteriorated to the point of desperation." Respondent further claimed that the maintenance obligation was unconscionable.

¶ 11 Respondent claimed that, at the time that petitioner filed the petition for dissolution of marriage, respondent was without formal employment and was "seeking to build a consulting business from scratch." He further claimed that he had been without steady income for over three years, and "his lack of steady employment for such an extended period of time coupled with his advancing age has compromised his ability to find employment at a level sufficient to support the maintenance obligation." Respondent claimed that the only "substantial" assets awarded to him in the dissolution judgment were his retirement accounts, which had been liquidated and turned over to petitioner to be applied towards his maintenance obligation. Respondent claimed that his gross income was $3000 per month, of which $1500 was being paid to petitioner. Respondent further claimed that he had been "diligently seeking more

lucrative employment," but had been unsuccessful. He had also been seeking "odd jobs" and turning over the income from those jobs to petitioner. Respondent claimed that the maintenance obligation as written was impossible for him to perform and that petitioner "has substantial assets and is well able to earn an income to support herself."

¶ 12    Attached to his motion was respondent's affidavit, in which he averred that in 2014, respondent was working in banking, earning approximately $140,000 per year. By March 2015, he had learned that his job was in jeopardy and feared he was going to lose his job. Since he had a master's degree in pastoral counseling, he believed his "best move forward was to develop a career in pastoral counseling." He left his job at the bank in April 2015, after giving notice in March 2015. After leaving his job at the bank, he had earnings of less than $3000 in 2016 and 2017. Beginning in 2018, he contracted with a not-for-profit agency, earning $3000 per month "producing transformational educational programs based in spiritual principles." He also performed several "one-off projects," which earned him an additional $6000.

¶ 13    Respondent averred that he had been searching for a job in the financial sector that would give him earnings equivalent to his former earnings, but had been unsuccessful. He had also contacted numerous executive recruiters, all of whom had advised him that it would be difficult to place him at the level of his former compensation, as he had been out of the financial sector for four years and lacked current experience. Respondent averred that his work with the not-for-profit had earned him a positive reputation and a number of professional connections, leading him to believe that his "most promising prospect for rebuilding a career" was to continue working in that sector.

¶ 14    In response to respondent's motion, petitioner claimed that the terms of the maintenance obligation were expressly made nonmodifiable in the marital settlement agreement. Petitioner

also claimed that respondent had been formally employed at the time that petitioner filed her petition for dissolution of marriage, contrary to his contention. Petitioner claimed that, at the time, she was supportive of respondent's efforts to build a consulting business, but that her support was predicated on respondent being able to continue to support her, as she made clear to him. Petitioner claimed that respondent quit his previous job voluntarily, because he was unhappy with it, and denied that respondent ever told her that he was about to lose his job. Petitioner also claimed that, in the dissolution judgment, respondent was awarded half of the funds in his 401(k) and three pension plans, received $17,000 from petitioner for a buyout of his interest in the parties' condominium, and was awarded "various bank accounts, stocks, stock options, and other assets in Respondent's name only which were not specifically known to Petitioner at the time of the entry of the parties' Judgment for Dissolution of Marriage."

¶ 15     Petitioner further claimed that, contrary to respondent's assertion, she suffered from a variety of health issues that made it difficult for her to earn an income; she was considered disabled by the State of Illinois and received employment assistance from the Illinois Department of Rehabilitation Services. Petitioner had not had regular part-time employment since Thanksgiving 2018, and had never been employed on a full-time basis.

¶ 16     On July 25, 2019, the trial court set respondent's motion for hearing "on the limited question of whether the non-modifiability provision of respondent's maintenance obligation is enforceable." The court further ordered that the question of whether there had been a change in circumstances would be reserved pending the court's ruling on the enforceability of the non-modifiability provision.

¶ 17     On September 17, 2019, the parties came before the court for a hearing, and agreed that the sole issue before the court was whether the maintenance obligation was modifiable under

section 502(f) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/502(f) (West 2018)). After hearing the parties' arguments, the court found that it "does not have the ability to modify Respondent's obligation to pay Petitioner maintenance as set forth in the parties' Judgment for Dissolution of Marriage entered on February 8, 2016, pursuant to Section 502(f) of the Illinois Marriage and Dissolution of Marriage Act." Accordingly, the court denied respondent's motion, further finding that there was no just reason to delay enforcement or appeal of the order.

¶ 18    On October 15, 2019, respondent filed a notice of appeal, and this appeal follows.

¶ 19                                    ANALYSIS

¶ 20    On appeal, we are presented with one question: whether the maintenance obligation in this marital settlement agreement is modifiable, even when respondent claims he cannot pay through a change in circumstances.[4] The answer to this question requires us to interpret the language of a statute, namely, section 502 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/502 (West 2018)), as well as the language of the marital settlement agreement.

¶ 21    "The fundamental objective of statutory construction is to ascertain and give effect to the intent of the legislature." *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶ 21 (citing *Bettis v. Marsaglia*, 2014 IL 117050, ¶ 13). "The most reliable indicator of legislative intent is the statutory language, given its plain and ordinary meaning." *1010 Lake Shore Ass'n*, 2015 IL 118372, ¶ 21 (citing *State Building Venture v. O'Donnell*, 239 Ill. 2d

---

[4] While our background section set forth the claims made by the parties below concerning the purported change in circumstances, as noted, the parties and the court agreed that the legal issue regarding modifiability would be resolved prior to considering any evidence as to changed circumstances. Accordingly, any evidence or argument concerning that issue is not contained in the record on appeal and we make no comment as to whether respondent would be able to prevail on such a claim.

151, 160 (2010)). "A reasonable construction must be given to each word, clause, and sentence of a statute, and no term should be rendered superfluous." *1010 Lake Shore Ass'n*, 2015 IL 118372, ¶ 21 (citing *Slepicka v. Illinois Department of Public Health*, 2014 IL 116927, ¶ 14). " '[W]hen statutory language is plain and certain the court is not free to give it a different meaning.' " *Kalkman v. Nedved*, 2013 IL App (3d) 120800, ¶ 12 (quoting *In re Estate of Hoehn*, 234 Ill. App. 3d 627, 629 (1992)). "[A] court may not depart from the plain statutory language by reading into it exceptions, limitations, or conditions not expressed by the legislature." *Kalkman*, 2013 IL App (3d) 120800, ¶ 12 (citing *In re Estate of Ellis*, 236 Ill. 2d 45, 51 (2009)). The interpretation and applicability of legislation are questions of law that are reviewed *de novo*. *Lewis v. Lead Industries Ass'n*, 2020 IL 124107, ¶ 36. *De novo* consideration means we perform the same analysis that a trial judge would perform. *XL Specialty Insurance Co. v. Performance Aircraft Leasing, Inc.*, 2019 IL App (1st) 181031, ¶ 62.

¶ 22    Additionally, a marital settlement agreement is construed in the same manner as any other contract, and a court must ascertain the parties' intent from the language of the agreement. *Blum v. Koster*, 235 Ill. 2d 21, 33 (2009). The interpretation of a marital settlement agreement is also reviewed *de novo* as a question of law. *Blum*, 235 Ill. 2d at 33.

¶ 23    Respondent first claims that the language in the marital settlement agreement was insufficient to render the maintenance obligation nonmodifiable under the Act. However, before considering the merits of respondent's argument, we must first determine the version of the Act that applies. The Act has undergone substantial amendment over the last several years and, in fact, section 502, the section that governs marital settlement agreements, was amended

during the pendency of the parties' dissolution proceedings.[5] The version that was in effect at the time of the filing of the petition for dissolution of marriage provided, in subsection (f):

> "Except for terms concerning the support, custody or visitation of children, the judgment may expressly preclude or limit modification of terms set forth in the judgment if the agreement so provides. Otherwise, terms of an agreement set forth in the judgment are automatically modified by modification of the judgment." 750 ILCS 5/502(f) (West 2014).

¶ 24    However, section 502 was amended by Public Act 99-90, which became effective on January 1, 2016. 750 ILCS 5/502 (West Supp. 2015). This amendment changed subsection (f) to provide:

> "Child support, support of children as provided in Section 513 after the children attain majority, and parental responsibility allocation of children may be modified upon a showing of a substantial change in circumstances. The parties may provide that maintenance is non-modifiable in amount, duration, or both. If the parties do not provide that maintenance is non-modifiable in amount, duration, or both, then those terms are modifiable upon a substantial change of circumstances. Property provisions of an agreement are never modifiable. The judgment may expressly preclude or limit modification of other terms set forth in the judgment if the agreement so provides. Otherwise, terms of an agreement set forth in the judgment are automatically modified by modification of the judgment." 750 ILCS 5/502(f) (West Supp. 2015).

---

[5] We note that, since the entry of the judgment of dissolution, section 502 has been amended twice more, with the most recent amendment becoming effective January 1, 2018. See 750 ILCS 5/502 (West 2016); Pub. Act 100-422 (eff. Jan. 1, 2018).

This is the version of the Act that was in effect at the time of the entry of the judgment for dissolution. Thus, prior to considering the merits of respondent's arguments, we must first determine which version of the Act applies—the version in effect at the time of the filing of the petition or the version in effect at the time of the entry of the judgment for dissolution of marriage.

¶ 25    Section 801 of the Act, which was also amended as part of Public Act 99-90, discusses applicability of the Act to proceedings in various stages of completion. 750 ILCS 5/801 (West Supp. 2015). Courts have used this section to determine whether the prior version of the Act governs, or whether the new version of the Act is applicable.[6] See, *e.g.*, *In re Marriage of Kasprzyk*, 2019 IL App (4th) 170838, ¶ 38 (finding new Act applicable); *In re Marriage of Benink*, 2018 IL App (2d) 170175, ¶ 29 (finding prior version of Act applicable); *In re Marriage of Carstens*, 2018 IL App (2d) 170183, ¶ 29 (finding new Act applicable); *In re Marriage of Ruvola*, 2017 IL App (2d) 160737, ¶ 13 (finding new Act applicable). As relevant to the instant case, section 801(b) provides that "[t]his Act applies to all pending actions and proceedings commenced prior to its effective date with respect to issues on which a judgment has not been entered." 750 ILCS 5/801(b) (West Supp. 2015). As noted, the petition for dissolution of marriage was filed on March 20, 2015, prior to the January 1, 2016, effective date of the amendment. However, the judgment for dissolution of marriage was entered on February 8, 2016, after the effective date of the amendment. Since "a judgment [had] not been

---

[6] As noted, the Act has been further amended since the amendment at issue. However, when we refer to the "new" or "amended" Act, we refer to the version of the Act that was effective January 1, 2016.

entered" prior to the effective date of the amended Act, under section 810(b), the new Act controls.[7] 750 ILCS 5/801(b) (West Supp. 2015).

¶ 26    We turn, then, to consideration of the requirements of section 502(f) of the Act, as applicable to the case at bar. As noted, section 502(f) provides, in relevant part, that "[t]he parties may provide that maintenance is non-modifiable in amount, duration, or both. If the parties do not provide that maintenance is non-modifiable in amount, duration, or both, then those terms are modifiable upon a substantial change of circumstances." 750 ILCS 5/502(f) (West Supp. 2015). The marital settlement agreement in the case at bar provided:

> "2.1 [Respondent] agrees to pay [petitioner] for her maintenance the sum of $5,000.00 (Five Thousand Dollars) per month for FOUR YEARS (48 months). The first monthly payment of $5,000.00 shall be paid on the 25th day of the month immediately following the entry of this Judgment herein and a like monthly payment of $5,000.00 to be paid on the same day each succeeding month thereafter. [Respondent] shall continue to pay maintenance to [petitioner] for an additional FOUR YEARS (a total of 8 years of maintenance shall be paid-in-full) in decreasing amounts as follows:
>
> a) Year 5: $50,000 annually ($4,166 per month);

---

[7] We note that, in *In re Marriage of Cole*, 2016 IL App (5th) 150224, ¶ 9, the court found that amended maintenance guidelines did not apply to a case in which the marriage, separation, and dissolution hearing all occurred prior to the amendment's effective date and the only action that occurred after the effective date was the actual entry of the judgment itself. However, in the case at bar, the parties entered into the marital settlement agreement, and came before the court for a hearing on the dissolution petition, after the January 1, 2016, effective date of the amendment at issue. Additionally, we must note that *Cole* did not include any discussion of section 801 of the Act or its impact on the issue and that at least one court has reached the opposite conclusion on similar facts based on the application of section 801. See *Ruvola*, 2017 IL App (2d) 160737, ¶ 13 ("We note first that the trial court was correct to apply the amendments to the [Act] that became effective on January 1, 2016. [Citation.] The amendments became effective after the closing of proofs in this case but before the judgment was rendered. [Citation.]").

b) Year 6: $40,000 annually ($3,333 per month);

c) Year 7: $30,000 annually ($2,500 per month);

d) Year 8: $20,000 annually ($1,666 per month).

*Said maintenance payments shall be non-modifiable pursuant to Section 502(f) of the Illinois Marriage and Dissolution of Marriage Act.* [Respondent] shall make said payments to [petitioner] by depositing monies into the jointly held Chase Bank account ***." (Emphasis added.)

We must determine whether the above language renders respondent's maintenance obligation nonmodifiable under the amended section 502(f).

¶ 27    Respondent contends that, because the marital settlement agreement did not expressly state that his maintenance obligation was "non-modifiable in amount, duration, or both" (750 ILCS 5/502(f) (West Supp. 2015)), then it was modifiable, despite the fact that the agreement expressly states that the obligation is nonmodifiable. In other words, respondent's argument is that the words "amount, duration, or both" must appear in the agreement in order to render the obligation nonmodifiable. We do not find this argument persuasive.

¶ 28    We note that it does not appear that this language has been interpreted by our courts since it was added to the Act, nor have we discovered any legislative history explaining why the language of section 502(f) was amended. Accordingly, we consider this issue as one of first impression. Respondent's position is that the amendment imposed a new requirement in order to render a maintenance obligation nonmodifiable: that the agreement expressly provide that the obligation is nonmodifiable as to amount, duration, or both. However, comparing the original version and the amended version reveals no such thing.

¶ 29    As noted, the original version of section 502(f) provided:

"Except for terms concerning the support, custody or visitation of children, the judgment may expressly preclude or limit modification of terms set forth in the judgment if the agreement so provides. Otherwise, terms of an agreement set forth in the judgment are automatically modified by modification of the judgment." 750 ILCS 5/502(f) (West 2014).

Under this version, the only limitations on the parties' ability to modify a judgment were (1) that child-related provisions could not be made nonmodifiable, and (2) that the parties could "expressly preclude or limit modification of terms set forth in the judgment." 750 ILCS 5/502(f) (West 2014).

¶ 30    The amended version went into further detail, specifically addressing several types of terms commonly included in marital settlement agreements:

"Child support, support of children as provided in Section 513 after the children attain majority, and parental responsibility allocation of children may be modified upon a showing of a substantial change in circumstances. The parties may provide that maintenance is non-modifiable in amount, duration, or both. If the parties do not provide that maintenance is non-modifiable in amount, duration, or both, then those terms are modifiable upon a substantial change of circumstances. Property provisions of an agreement are never modifiable. The judgment may expressly preclude or limit modification of other terms set forth in the judgment if the agreement so provides. Otherwise, terms of an agreement set forth in the judgment are automatically modified by modification of the judgment." 750 ILCS 5/502(f) (West Supp. 2015).

Thus, the new version (1) specified the circumstances under which child-related provisions could be modified and (2) provided that property provisions were never modifiable. 750 ILCS

14

5/502(f) (West Supp. 2015). Additionally, as relevant to the instant appeal, the new version specifically addressed maintenance, providing that the parties could agree (1) that maintenance was nonmodifiable in amount, (2) that maintenance was nonmodifiable in duration, or (3) that maintenance was nonmodifiable in both amount and duration. 750 ILCS 5/502(f) (West Supp. 2015).[8] In other words, the maintenance provision allowed the parties to make maintenance as a whole nonmodifiable or to select a single aspect of the obligation to make nonmodifiable. If the parties did not agree that maintenance was nonmodifiable, either in whole or in part, then maintenance was modifiable upon a substantial change of circumstances. 750 ILCS 5/502(f) (West Supp. 2015).

¶ 31    In the case at bar, the clear language of the marital settlement agreement shows that the parties intended that respondent's maintenance obligation be nonmodifiable under section 502(f). The agreement set forth a schedule of payments to be made over eight years, and expressly provided that "[s]aid maintenance payments shall be non-modifiable pursuant to Section 502(f) of the Illinois Marriage and Dissolution of Marriage Act." We cannot imagine a clearer expression of an intent to make the obligation nonmodifiable—not only did the agreement expressly provide that the obligation was nonmodifiable, but it cited the applicable provision of the Act.

¶ 32    Respondent's contention that the agreement was required to expressly include the terms "amount, duration, or both" has no support in the language of the statute. If the legislature had intended that the parties were required to specifically state whether the nonmodifiability applied to amount, duration, or both, it certainly could have said so. Indeed, it included such a

_____

[8] The new version also kept in place the catchall provision that the parties could expressly preclude or limit modification of other terms set forth in the judgment. 750 ILCS 5/502(f) (West Supp. 2015).

requirement in the very same section: section 502(f) provides that the dissolution judgment "may expressly preclude or limit modification of other terms set forth in the judgment if the agreement so provides." 750 ILCS 5/502(f) (West Supp. 2015). Instead, it is clear that the legislature was intending to provide parties with *more* flexibility as to maintenance provisions, allowing them to make portions of the obligation nonmodifiable while leaving others modifiable. There is nothing to suggest that the failure to specifically designate that the nonmodifiability applied to the maintenance obligation as a whole renders the obligation modifiable. This would be the height of exalting form over substance—because the parties failed to use the magic words, the obligation would become modifiable even despite a clear expression that they intended it to be nonmodifiable. There is no suggestion that the legislature intended such a result, and we will not infer it from the language of the amended Act. In the absence of any evidence that the nonmodifiability was intended to apply to only one aspect of the maintenance obligation, the trial court properly determined that the parties intended that the entire maintenance obligation was nonmodifiable. Consequently, the trial court properly denied respondent's motion to modify the judgment.

¶ 33                                             CONCLUSION

¶ 34        The trial court's denial of respondent's motion to modify the dissolution judgment is affirmed, where the language of the marital settlement agreement provided that the maintenance obligation was nonmodifiable under section 502(f) of the Act, and where there is nothing to suggest that the nonmodifiability provision was intended to apply to only one aspect of the maintenance obligation.

¶ 35        Affirmed.

16

**No. 1-19-2116**

| | |
|---|---|
| **Cite as:** | *In re Marriage of Dynako*, 2020 IL App (1st) 192116 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2015 D 002531; the Hon. David Haracz, Judge, presiding. |
| **Attorneys for Appellant:** | August Staas, of Park Ridge, for appellant. |
| **Attorneys for Appellee:** | Betsy Dynako, n/k/a Betsy Zacate, *pro se*. |