NOTICE

Decision filed 04/29/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 210195-U

NO. 5-21-0195

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| RITA PODOLSKY, | ) | Wayne County. |
| | ) | |
|     Petitioner-Appellee, | ) | |
| | ) | |
| and | ) | No. 15-D-73 |
| | ) | |
| MICHAEL D. PODOLSKY, | ) | Honorable |
| | ) | Michael J. Molt, |
|     Respondent-Appellant. | ) | Judge, presiding. |

_____

JUSTICE WHARTON delivered the judgment of the court.
Presiding Justice Boie and Justice Welch concurred in the judgment.

**ORDER**

¶ 1    *Held*: Where the parties included terms in their marital settlement agreement reserving the right to pursue remedies pursuant to section 502 of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/502 (West 2016)) if the parties could not agree to a written modification agreement, the trial court's orders granting Rita Podolsky's motion to dismiss Michael D. Podolsky's motion to modify maintenance and denying Michael D. Podolsky's motion to reconsider were in error. We reverse the trial court's orders and remand the case for a hearing to determine if Michael D. Podolsky established that there had been a substantial change of circumstances warranting modification of the maintenance award.

¶ 2    The respondent, Michael D. Podolsky, appeals from the trial court's August 17, 2020, order granting Rita Podolsky's motion to dismiss his motion seeking a maintenance modification, and from the June 11, 2021, order denying his motion to reconsider. At issue on appeal is whether the

1

parties agreed to the possibility of statutory modification of the maintenance provision contained within the November 18, 2016, marital settlement agreement (MSA). We reverse and remand.

¶ 3                                    I. BACKGROUND

¶ 4      Rita and Michael were married in 1981. On November 18, 2016, the trial court entered its judgment of dissolution of marriage that incorporated a MSA. Rita's attorney prepared the MSA. At the time of the divorce, settlement, and the filing of his motion to modify, Michael was in the business of oil production. The MSA required Michael to pay Rita $10,000 per month in permanent maintenance subject to termination for the statutory bases—if either party died, if Rita remarried, or if Rita cohabitated with another individual on a continuing conjugal basis. See 750 ILCS 5/510(c) (West 2016). Michael was required to secure the maintenance award with life insurance policies. In the event that Michael predeceased Rita, she maintained the right to make a claim against Michael's estate for the difference of the life insurance proceeds (then valued at $202,698) and $500,000.

¶ 5      On April 30, 2020, Michael filed a motion for modification of maintenance, alleging that due to the Covid pandemic and other stated reasons, the oil business was in crisis in that it was costing him more to produce a barrel of crude oil than the amount he could receive to sell a barrel of crude oil. He alleged that his income had substantially decreased because of this production cost versus sales price issue. Additionally, his oil investment dividends were significantly less, and due to Covid restrictions and a glut of Middle Eastern oil on the market, his income stream had been adversely impacted.

¶ 6      Thereafter, on June 12, 2020, Rita filed a rule to show cause petition because Michael had not been making full and timely maintenance payments to her. The court entered a show cause

2

order on June 17, 2020, requiring Michael to show cause why he should not be held in indirect civil contempt for failing to pay Rita the court-ordered maintenance.

¶ 7     On June 17, 2020, Rita filed a motion to dismiss Michael's petition seeking a maintenance modification. She stated that the MSA was incorporated into the dissolution judgment and argued that section 502 of the Illinois Marriage and Dissolution of Marriage Act (Act) provided that the parties' MSA took precedence over the statutory provisions that would otherwise allow maintenance to be modified. At issue was section 10.6(D) of the MSA which provides:

> "Except as otherwise provided for in Section 502 of the [Act], the parties may only amend or modify this Agreement by a written Agreement dated and signed by them. No oral Agreement shall be effective to in any manner modify or waive any terms or conditions of this Agreement."

Rita argued that the MSA only authorized modification to the maintenance award when the parties agreed to the modification in writing.

¶ 8     In its August 17, 2020, order denying Michael's motion to modify, the court found that section 10.6(D) of the MSA only allowed modification by written agreement of the parties, stating that the court believed that section "clearly manifest[ed] the parties' intent that maintenance be non-modifiable." The court did not discuss statutory modification or otherwise reference section 502 of the Act in its ruling. While noting that the terms of the MSA must be given their plain and ordinary meaning (*In re Marriage of Michaelson*, 359 Ill. App. 3d 706, 714 (2005)), the court stated again that the MSA, by its terms, was nonmodifiable unless the parties agreed to a written modification: "[T]he Podolsky MSA clearly indicates that the entire agreement itself is not modifiable unless by written agreement signed by both parties, and RITA has not signed any request for an agreement for modification." The court cited *In re Marriage of Schweitzer* as controlling (*In re Marriage of Schweitzer*, 289 Ill. App. 3d 425 (1997)), stating that when the parties agree that maintenance is nonmodifiable except in certain situations, as the parties clearly

3

did in section 10.6(D) of their MSA, modification in the manner sought by Michael was not allowed. In paragraph 9 of the court's order, the court indicated that it did not, and would not, "address the issue of 'substantial change in circumstances' because the language of the Podolsky MSA and the existing case law dictates that the maintenance is non-modifiable."

¶ 9    On February 8, 2021, the trial court entered an order dismissing Rita's rule to show cause petition with prejudice. The court noted that so long as Rita's petition remained pending, Michael was precluded from appealing the court's order denying his motion to modify maintenance. In that order, the court stated that the parties agreed that as of that date, there was no outstanding unpaid maintenance.

¶ 10    On February 23, 2021, Michael filed a motion for reconsideration of the trial court's August 17, 2020, order granting Rita's motion to dismiss his motion to modify maintenance. Michael attached two affidavits of attorneys who represented him when the MSA was negotiated and agreed to by the parties. Both attorneys stated that there were no settlement discussions that the MSA would be nonmodifiable. Furthermore, the two attorneys stated that when the MSA was presented and "proved up" to the trial court, neither party testified that the maintenance provision was nonmodifiable. In his motion, Michael argued that the inclusion of the citation to section 502 of the Act was purposeful and intended to allow for statutory modification of the MSA.

¶ 11    On June 11, 2021, the trial court entered its order denying Michael's motion to reconsider. The trial court based its holding on the authority cited in its earlier order granting Rita's motion to dismiss.

4

¶ 12                                    II. ANALYSIS

¶ 13    Michael argues that the trial court erred in denying his motion to modify because the express language of the MSA indicated that the parties contemplated the possibility of seeking a modification if there was a substantial change of circumstances. We agree.

¶ 14    Our review of the issues raised in this appeal is *de novo* because the trial court's order granting Rita's motion to dismiss was based on section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2018)), because we are being asked to interpret the provisions of the MSA—a contractual document, and because we must engage in statutory construction regarding section 502 of the Act. *Oswald v. Hamer*, 2018 IL 122203, ¶ 9; *Blum v. Koster*, 235 Ill. 2d 21, 33 (2009); *Doyle v. Holy Cross Hospital*, 186 Ill. 2d 104, 109-10 (1999); *In re Marriage of Doermer*, 2011 IL App (1st) 101567, ¶ 16. In reviewing the terms of an MSA, we construe the agreement similarly to a contract, and therefore, must ascertain the parties' intent from the language of the agreement. See *Blum*, 235 Ill. 2d at 33.

¶ 15    We turn to the precise language at issue in the MSA and in the Act. The provision at issue in the parties' MSA expressly references section 502 of the Act, stating that modification is only allowed if the parties agree in writing "[e]xcept as otherwise provided for in Section 502 of the [Act]."

¶ 16    We begin with a definition of the word "except"—a key word the parties used in the MSA section at issue. The primary and applicable definition for "except," is "with the exclusion or exception of." Webster's Ninth New Collegiate Dictionary 432 (1988).

¶ 17    Section 10.6(D) of the MSA generally cited to section 502 of the Act without reference to a specific subsection. Therefore, we next turn to the subsections of section 502 to determine which, if any, subsections are relevant to the prefatory clause of section 10.6(D) that contains the "except"

5

language. Subsection 502(a) provides that "parties may enter into an agreement containing provisions for *** maintenance." 750 ILCS 5/502(a) (West 2016). Based on the language of subsection 502(a), we conclude that subsection 502(a) was not the subsection intended for the "except" clause qualification of the MSA. Subsection 502(b) provides that "[t]he terms of the agreement *** are binding upon the court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties, on their own motion or on request of the court, that the agreement is unconscionable." *Id.* § 502(b). We conclude that subsection 502(b) was not the subsection intended by the "except" clause qualification. Subsection 502(c) provides that "[i]f the court finds the agreement unconscionable, it may request the parties to submit a revised agreement or upon hearing, may make orders for the disposition of property, maintenance, child support and other matters." *Id.* § 502(c). We conclude that subsection 502(c) was not the subsection intended by the "except" clause qualification. Subsection 502(d) provides that "[u]nless the agreement provides to the contrary, its terms shall be set forth in the judgment, and the parties shall be ordered to perform under such terms, or if the agreement provides that its terms shall not be set forth in the judgment, the judgment shall identify the agreement and state that the court has approved its terms." *Id.* § 502(d). We conclude that subsection 502(d) was not the subsection intended by the "except" clause qualification. Subsection 502(e) provides that "[t]erms of the agreement set forth in the judgment are enforceable by all remedies available for enforcement of a judgment, including contempt, and are enforceable as contract terms." *Id.* § 502(e). We conclude that subsection 502(e) was not the subsection intended by the "except" clause qualification. Finally, subsection 502(f) of the Act provides that "[t]he parties may provide that maintenance is non-modifiable in amount, duration, or both. If the parties do not provide that maintenance is non-modifiable in amount, duration, or both, then those terms

6

are modifiable upon a substantial change of circumstances." *Id.* § 502(f). Having reviewed section 502 in its entirety, along with the definition of the word "except" used by the parties in the MSA, we conclude that subsection 502(f) is the intended subsection of the prefatory "except" clause.

¶ 18    The trial court's decision was informed by *In re Marriage of Schweitzer*, a case cited by Michael and Rita. We agree that the court's holding in *Marriage of Schweitzer* has bearing on aspects of this case. However, we find that a recent Illinois Supreme Court case, *In re Marriage of Dynako*, 2021 IL 126835, although factionally distinguishable, is also relevant in analyzing the intent of the wording of section 10.6(D) of the MSA in this case.

¶ 19    In *Marriage of Schweitzer*, the couple divorced after a lengthy marriage, and as part of the dissolution process, they entered into an MSA, which was incorporated into the judgment of dissolution. *In re Marriage of Schweitzer*, 289 Ill. App. 3d at 426. Pursuant to the MSA, the husband agreed to pay monthly maintenance to his ex-wife that would only terminate on the death of either party. *Id.* Elsewhere in the MSA, a provision provided that the agreement " 'shall not be modifiable.' " *Id.* at 427. About six years after the parties divorced, the husband filed a petition to modify the judgment alleging that there had been a material change in circumstances—that he had a $20,000 decrease in annual income because he would no longer be raising and selling hogs, and because his ex-wife was planning to sell certain properties that would provide her with additional income. *Id.* The trial court concluded that the MSA was nonmodifiable by its express terms. *Id.* The appellate court agreed and affirmed. *Id.*

¶ 20    In *Marriage of Schweitzer*, the husband argued that if the parties had intended to prohibit modification of the maintenance agreement, the express prohibition would have been within the maintenance section of the agreement, and not in a more general section of the agreement. *Id.* The

7

appellate court rejected the husband's argument, stating that the agreement unambiguously provided that the agreement in its entirety was nonmodifiable. *Id*. at 429.

¶ 21    The appellate court noted that section 502(f) of the Act provided that the agreement may preclude modification if the terms at issue did not involve child support, custody, or visitation. *Id.* at 427 (citing Ill. Rev. Stat. 1989, ch. 40, ¶ 502(f)). The appellate court also noted that section 510(c) of the Act stated that the party seeking to modify the maintenance agreement needed to establish " 'a substantial change in circumstances.' " *Id.* at 427-28 (quoting Ill. Rev. Stat. 1989, ch. 40, ¶ 510(a)). However, the court then stated:

> "It is clear that parties may agree that maintenance shall not be modified or terminated except upon certain specified conditions. When the parties so agree, maintenance may be modified or terminated only under the circumstances specified in the agreement. The purpose of allowing parties to agree in advance to the circumstances under which maintenance may be modified or terminated is to permit them to plan for the future by eliminating concerns based upon subsequent motions to increase or decrease their obligations. [Citation.] The intent of the parties to preclude or limit modification of maintenance must be clearly manifested in their agreement. [Citation.]" *Id.* at 428.

¶ 22    In this case, the trial court found that the *Marriage of Schweitzer* quote in paragraph 21 of this order supported its conclusion that the MSA was only modifiable by the written agreement of both parties. The trial court's focus on the *Marriage of Schweitzer* language—"[w]hen the parties so agree, maintenance may be modified or terminated only under the circumstances specified in the agreement"—resulted in the court's characterization that this MSA was "nonmodifiable." However, the language used by the parties in the *Marriage of Schweitzer* agreement is clearly distinguishable from the language Michael and Rita used in their MSA. We find the trial court's reliance on *Marriage of Schweitzer* as authority that this MSA was nonmodifiable is misplaced.

¶ 23    Michael and Rita included the clause, "[e]xcept as otherwise provided for in Section 502 of the [Act]," as the preface to section 10.6(D) of the MSA. We acknowledge that elsewhere in section 10.6(D) of the MSA, Michael and Rita agreed that the terms of the agreement could only

8

be modified with a written agreement—not with a verbal agreement. However, Michael and Rita did not state that the agreement was nonmodifiable as the parties expressly did in *Marriage of Schweitzer*. Moreover, Michael and Rita did not state that their MSA could *only* be modified by their written agreement. As the court stated in *Marriage of Schweitzer*, if the parties "agree that maintenance shall not be modified," maintenance can only be modified "under the circumstances specified in the agreement." *Id.* Michael and Rita foresaw the possibility where they could not agree to a modification in writing. If Michael and Rita could not agree to a modification, the MSA provided that either party could seek a statutory modification pursuant to section 502 of the Act.

¶ 24    Whether the trial court omitted consideration of the prefatory phrase in section 10.6(D) of the MSA is not clear from the court's orders. The court's order included no reference to the "except" clause of that section and only focused on the other half of the provision. However, the two clauses of the MSA provision, agreed to by Michael and Rita, cannot be considered independently. See *In re Marriage of Michaelson*, 359 Ill. App. 3d at 711 (finding that two clauses of the agreement had to be construed together).

¶ 25    More recently, in *In re Marriage of Dynako*, 2021 IL 126835, the Illinois Supreme Court analyzed a maintenance provision of an MSA that stated that an eight-year maintenance payments schedule was " 'nonmodifiable pursuant to Section 502(f) of the [Act].' " (Emphasis omitted.) *Id.* ¶ 4. The supreme court stated that although the MSA did not include the precise words used by our legislature in section 502(f) of the Act—that the agreement was nonmodifiable in amount, duration, or both—the reference to section 502(f) "demonstrated the intent of the parties to make the obligation nonmodifiable." *Id.* ¶ 20 (citing *In re Marriage of Dynako*, 2020 IL App (1st) 192116, ¶ 30). Therefore, "[i]f a party to the dissolution does not agree that maintenance is

9

nonmodifiable, either in whole or in part, then maintenance may be modified upon a showing of a substantial change of circumstances." *Id.* ¶ 19.

¶ 26    Michael and Rita, in agreeing to the terms of their MSA, did not state that the agreement is nonmodifiable, as the parties did in *Marriage of Dynako*. Instead, Michael and Rita agreed that any modification had to be in a written form. They also agreed that the terms of this modification agreement were subject to the provisions of section 502 of the Act. Turning to section 502(f), that section provides that "[i]f the parties do not provide that maintenance is non-modifiable in amount, duration, or both, then those terms are modifiable upon a substantial change of circumstances." 750 ILCS 5/502(f) (West 2016). In this case, Michael and Rita did not exclude the possibility of modification and chose to specifically reference section 502 of the Act in their agreement. We find that the court's analysis in *Marriage of Dynako* is helpful, albeit that the case is factually distinguishable. When the parties expressly cite to section 502 in their MSA, that citation is purposeful and should be considered. In *Marriage of Dynako*, the court found that the section 502 citation, coupled with the inclusion of the nonmodifiable term in the MSA, were utilized to exclude modification despite the existence of a substantial change of circumstances. *In re Marriage of Dynako*, 2021 IL 126835, ¶ 20. Here, Michael and Rita agreed that they could make a written agreement to modify the MSA. They alternatively cited section 502 of the Act if they were unable to agree to the modification in writing. We conclude that in the absence of a written agreement to modify maintenance, section 502(f), as applied to the facts of this case, allows modification if there has been a substantial change in circumstances. *Id.* In reaching the settlement that culminated in the MSA's execution, the parties contemplated the possibility that either party could experience a substantial change of circumstances warranting a change in modification.

¶ 27    Michael's involvement in the oil production and sales business was known by the parties at the time that they decided to dissolve their marriage and when they agreed to the maintenance terms of the MSA. The oil market has historically experienced increases and decreases in production costs and sales prices. This volatility is explained as follows by the United States Energy Information Administration:

> "Both crude oil and petroleum product prices can be affected by events that have the potential to disrupt the flow of oil and products to market, including geopolitical and weather-related developments. These types of events may lead to actual disruptions or create uncertainty about future supply or demand, which can lead to higher volatility in prices. The volatility of oil prices is inherently tied to the low responsiveness or 'inelasticity' of both supply and demand to price changes in the short run. Both oil production capacity and the equipment that use petroleum products as their main source of energy are relatively fixed in the near-term. It takes years to develop new supply sources or vary production, and it is very hard for consumers to switch to other fuels or increase fuel efficiency in the near-term when prices rise. Under such conditions, a large price change can be necessary to re-balance physical supply and demand following a shock to the system.

> Much of the world's crude oil is located in regions that have been prone historically to political upheaval or have had their oil production disrupted due to political events. Several major oil price shocks have occurred at the same time as supply disruptions triggered by political events, most notably the Arab Oil Embargo in 1973-74, the Iranian revolution and Iran-Iraq war in the late 1970s and early 1980s, and Persian Gulf War in 1990. More recently, disruptions to supply (or curbs on potential development of resources) from political events have been seen in Nigeria, Venezuela, Iraq, Iran, and Libya."

During oral arguments on appeal, Rita's attorney stated that the volatility of the oil production business was the foundation for the nonmodifiable nature of the MSA. We find that Rita's argument is incorrect, as she too ignores the express language of the MSA—written by Rita's attorney—that allows statutory modification where appropriate.

¶ 28    Although a global pandemic may not have been contemplated by Michael and Rita when they entered into the MSA, the overall volatility of the industry was apparent when the parties agreed to the permanent award of maintenance. As we have concluded that the parties agreed that the terms of the MSA were subject to section 502 of the Act, both parties retain the right to seek

11

modification of the terms of the permanent maintenance award subject to the requirement that he or she must establish a substantial change of circumstances. 750 ILCS 5/502(f) (West 2016). Accordingly, we conclude that the trial court's conclusion that the MSA could not be modified other than by the written agreement of the parties was incorrect. As the trial court stated that it did not consider Michael's claim that he had experienced a substantial change in circumstances warranting a downward modification of the maintenance award, we remand the case to the trial court to hold this hearing and consider the merits of Michael's motion.

¶ 29                                III. CONCLUSION

¶ 30    For the reasons stated in this order, we reverse the Wayne County circuit court's judgments and remand the case back to the trial court for a determination of the merits of Michael's motion to modify.


¶ 31    Reversed and remanded.